## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MALCOLM INTERNATIONAL LLC, a
Delaware limited liability company,

        Plaintiff,

v.                           No.

FISHER SAND & GRAVEL-NEW
MEXICO, INC., a New Mexico
corporation,

        Defendant.

## COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, QUANTUM MERUIT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

COMES NOW Plaintiff, Malcolm International LLC, by and through its counsel, and hereby files this Complaint and for good cause alleges as follows:

### JURISDICTION

1. Malcolm International LLC ("**Malcolm**") is a Delaware limited liability company having its principal place of business in Camden, Delaware.

2. No member of Malcolm are residents of the State of New Mexico.

3. Malcolm is licensed as a contractor by the State of New Mexico, Regulation Licensing Department, Construction Industries Division under license number 392317.

4. Defendant Fisher Sand & Gravel-New Mexico, Inc. ("**Fisher**") is a New Mexico corporation having its principal place of business in Sandoval County, New Mexico.

5. The amount in controversy between Malcolm and Fisher exceeds the sum or value of $75,000.00, exclusive of interest, fees and costs.

6. Pursuant to 28 U.S.C. § 1332, jurisdiction of this matter is proper in the United States District Court for the District of New Mexico.

7.      Pursuant to 28 U.S.C. § 1391(b)(1) and (2) and N.M.S.A. 1978, § 57-28A-1, venue is proper in the District of New Mexico because the construction contract work at issue in this matter was performed in Quay County, New Mexico.

## GENERAL ALLEGATIONS

8.      Malcolm incorporates by reference herein each and every allegation contained in the preceding paragraphs of this Complaint.

9.      On or about August 18, 2017 the New Mexico Department of Transportation ("**NMDOT**") received bids for new construction of a bridge and related highway between Mile Post 324.900 and Mile Post 326.300 on U.S. 54 in Quay County ("**Project**").

10.     Fisher was selected by NMDOT as the low bidder and was awarded contract CN 4100401R for the performance of the work on the Project.

11.     On or about January 11, 2018 Malcolm entered into a subcontract with Fisher for a portion of the work on the Project, including cast-in-place piers and other bridge components to be built above drilled shaft foundations installed by Fisher.  A copy of the subcontract between Malcolm and Fisher is attached to this Complaint as Exhibit 1.

12.     On or about March 22, 2018 Fisher requested a change in the design for the Project to raise the grade for Piers 1 and 2 that were to be constructed by Malcolm.  This design change reduced the depth of excavation and increased the length of the drilled piers to be installed by Fisher, and it reduced the risk that footing excavations would cause contamination of subsurface water.

13.     Fisher as part of its request to NMDOT agreed to absorb the cost of producing a revised design and acknowledged that this change was likely to delay the project schedule by at least seven weeks.

14.     Fisher did not consult with Malcolm as to the impact or costs to Malcolm as a result of the proposed change prior to making the offer to NMDOT.

15.     The change in design to the bridge substantially increased Malcolm's costs for performance of its work.  It delayed the commencement of Malcolm's work, and it forced Malcolm

to perform its work in substantially different conditions than originally anticipated when entering into the subcontract.

16.    On August 10, 2018, Malcolm gave Fisher an initial estimate of impacts expected to arise from the design change.

17.    On or about August 23, 2018, Malcolm and Fisher presented the estimated impacts to NMDOT for compensation as a change order to the contract. At that point, Fisher remained willing to absorb the cost to prepare a revised design but joined Malcolm in asking NMDOT to pay for impacts on Malcolm's costs of construction.

18.    On August 20, 2019, NMDOT called on Fisher to execute prime contract Change Order No. 6 no later than August 30, 2019. Change Order No. 6 confirmed approval for the design change but included no compensation for Malcolm's additional costs.

19.    Fisher executed Change Order No. 6 on October 7, 2020, without disclosing the change order to Malcolm. The change order granted a forty-five day extension to the prime contract, but it allowed no compensation for any cost impacts of the change.

20.    Fisher and NMDOT were aware at the time of executing Change Order No. 6 that Malcolm was asserting time and cost impacts that were not compensated in the change order.

21.    The change order executed by Frank Lozano on behalf of Fisher specifically provided that:

> This document constitutes a binding contractual amendment to the above parent contract, although it is mutually understood that the quantities and total costs herein are estimates only. By approving this change order the Contractor acknowledges that the compensation provided herein properly and adequately compensates the Contractor for the additional work described in this change order, and the Contractor hereby waives any claim under the Contract for additional compensation for such work."

A copy of Change Order No. 6 is attached to this Complaint as Exhibit 2.

22.    Despite its execution of Change Order No. 6, Fisher continued to maintain that Malcolm's claim for additional compensation was a proper claim against NMDOT and must be processed in accordance with the administrative review requirements contained in Section 105.20

of the New Mexico Department of Transportation, Standard Specifications for Highway and Bridge Construction.

23.    Malcolm and Fisher together followed the administrative remedies pursuant to Standard Specification Section 105, until the claim was denied by the Secretary of NMDOT on August 18, 2022.  NMDOT based its final denial on Fisher's execution of Change Order No. 6.

24.    On December 20, 2022, Malcolm, Fisher and NMDOT conducted a Public Works mediation as required by the Public Works Mediation Act, NMSA 1978, §13-4C-11 and Section 105.20.4 of the New Mexico Department of Transportation Standard Specifications for Highway and Bridge Construction, as amended by the parties.

25.    Pursuant to Standard Specification Section 105.20.4, Fisher, as the Contractor, was required to maintain Malcolm's claim by proceeding with litigation against NMDOT. Specifically, Fisher was required to file a summons and complaint on Malcolm's behalf if it intended to further pursue the claims, and Fisher's failure to file such a complaint waived the claim on Malcolm's behalf against NMDOT.

26.    When Fisher was asked to maintain Malcolm's claim by filing a complaint against NMDOT, Fisher insisted that Malcolm should first release Fisher from any liability for its decision to sign the waiver language in Change Order No. 6.  When Malcolm pointed out that it was not required to provide such a release under its subcontract, Fisher responded by choosing not to file a complaint against NMDOT, thereby prejudicing any further claim against NMDOT for the damages caused to Malcolm.

**COUNT I**

**BREACH OF CONTRACT**

27.    Malcolm incorporates by reference herein each and every allegation contained in the preceding paragraphs of this Complaint.

28.    Malcolm entered into an enforceable agreement with Fisher as indicated above.

29.    Malcolm fully and satisfactorily performed its work pursuant to the subcontract.

30.    Fisher has materially breached the subcontract by:

     a.     Amending Malcolm's scope of work without consultation with Malcolm;

     b.     Delaying and increasing the cost of performance of the subcontract;

     c.     Releasing pass-through claims to NMDOT on behalf of Malcolm without Malcolm's approval;

     d.     Failure to preserve Malcolm's claims for compensation; and

     e.     Failure to pay Malcolm for the increased costs of performing changed work under the subcontract.

31.     As a direct and proximate result of Fisher's breaches of the subcontract, Malcolm has suffered damages in an amount to be proved at trial, but currently estimated as at least $4,187,315, plus interest, costs and attorney's fees.

## COUNT II

## UNJUST ENRICHMENT/QUANTUM MERUIT

32.     Malcolm incorporates by reference herein each and every allegation contained in the preceding paragraphs of this Complaint.

33.     Malcolm has furnished labor and materials to the Project well in excess of the subcontract amounts paid which have conferred a reasonable value on Fisher.

34.     Malcolm provided labor and materials and acted as alleged above with the expectation of receiving compensation for the reasonable value of the labor and services provided.

35.     To permit Fisher to retain the benefit of the additional work performed and increased costs incurred by Malcolm without compensating Malcolm for that additional work and cost would result in an unjust enrichment of Fisher.

36.     The reasonable value of the labor and services provided by Malcolm and for which it has not been compensated is $4,187,315.

37.     Malcolm is entitled to payment for the value of the labor and materials provided, plus interest thereon, costs and attorney's fees.

## COUNT III

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

38.     Malcolm incorporates by reference herein each and every allegation contained in the preceding paragraphs of the Complaint.

39.     Every contract in New Mexico, including the subcontract at issue in this litigation, includes an implied duty of good faith and fair dealing.

40.     Fisher breached the implied duty of good faith and fair dealing, by among other things, failing to discuss with Malcolm changes to the scope of work under its subcontract, waiving claims on Malcolm's behalf without Malcolm's consent, failing to preserve Malcolm's rights and failing to compensate Malcolm for the additional costs that arose out of Fisher's actions.

41.     Fisher acted unreasonably under the circumstances in its administration and management of the Project and Malcolm's subcontract.

42.     Fisher breached its duties and responsibilities to Fisher under the subcontract.

43.     Malcolm has been damaged by Fisher's failure to act in good faith in an amount to be proved at trial, but currently estimated as at least $4,187,315, plus interest, costs and attorney's fees.

WHEREFORE, Malcolm International LLC respectfully requests that judgment be issued against Fisher Sand & Gravel-New Mexico, Inc. in an amount to be proved at trial, but currently estimated as at least $4,187,315, plus interest, costs and attorney's fees.

CALVERT MENICUCCI, P.C.

*/s/ Sean R. Calvert*
SEAN CALVERT
*Attorney for Plaintiff*
8804 Washington St., NE, Suite E
Albuquerque, New Mexico 87113
(505) 247-9100
scalvert@hardhatlaw.net

Form No. A-1086
Rev.2/2016 CCRB
Page 1 of

This Subcontractor is a: **1st Tier**
(Select Tier)

### New Mexico Department of Transportation
### PERMISSION TO SUBCONTRACT REQUEST

No.: 7
Date: 1-10-2018

Fisher Sand & Gravel-New Mexico, Inc. requests permission to Subcontract the Work listed on this form for the following Project:

Contractor __ Subcontractor ✓ (Select one)

Control No.: 4100401R
Subcontractor: Malcolm International LLC
Address: 3286 Fitzgerald Rd

City, State, Zip: Rancho Cordova, CA 95742
General Wage Decision No.: NM170051

License No.: 392317
License Classification: GF02
DWS Registration No.
(Subcontract over $60,000:) 28144415562017
Subcontractor DUNS No.: 080489843
NM Min. Wage Rates Decision No.: QU-17-1133-A

This Subcontractor (a) __ is   (b) ✓ is not (check a) or (b) as appropriate) a DBE Firm.
This Subcontractor (a) ✓ is   (b) __ is not (check a) or (b) as appropriate) prequalified with NMDOT as of 4 /20 / 17 .
This Subcontractor __ is a Professional Service as defined per Section 101.4 Terms & Definitions and performs Work within the Project limits and the Statement of Intent to pay prevailing wages is not required.
The Subcontractor __ is exempt from LCPtracker, explain why below:

The Disclosure form LLL (Disclosure) is only required when a subcontract, at any tier, exceeds $100,000.00, and the Subcontractor:

1. Has paid or will pay to any person for influencing or attempting to influence an officer or employee or any Federal agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Project. The Contractor shall return its Subcontractor's completed Disclosure with this Request.

2. Shall submit an updated Disclosure to the Contractor at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in its Subcontractor's Disclosure previously submitted. The Contractor shall immediately submit the same to the Project Manager.

If a Subcontractor, at any tier, performs ten percent or more of the Total Original Contract Amount and has or grows to have during the Project ten (10) or more employees or eight (8) employees in the same job classification, then the Contractor shall submit to the Project Manager its Subcontractor's completed PE 10-249 or PE250 with this request. Subsequent form PE 10-249 or PE250 submittals, by the Contractor for its Subcontractors, at any tier, shall be due annually on the anniversary date of the Project Manager's approval of the permission to subcontract package.

Contractor __ Subcontractor ✓ shall also attach: letters of consent from the Contractor's Surety, a copy of the subcontract including FHWA-1273, a copy of the Subcontractor's wallet card/license/CID webpage and a completed copy of the Subcontractor's statement of intent to pay prevailing wages if it was not submitted at bid. The SAM.gov page if the subcontract amount is over $25,000. If the subcontract amount is over $100,000 and the conditions above are met, the completed Disclosure. If conditions above are met, the completed PE 10-249 or PE250.

RECEIVED
JAN 16 2018
By

EXHIBIT "1"

Form No. A-1086
Rev.2/2016 CCRB
Page 2 of

This Subcontractor is a: __1st Tier__

By signing below, the Contractor certifies that the Subcontractor, at any tier, has the appropriate license classification to perform the Work, the Contractor's Contract was provided to the Subcontractor, at any tier, the terms and conditions of the Contractor's Contract apply to the Work under the subcontract, at any tier, and the terms and conditions of the Contract will be observed and followed by the Subcontractor, at any tier.

The NMDOT's concurrence below shall not be considered approval or acceptance of the terms and conditions contained in the subcontract.

| | | |
|---|---|---|
| Malcolm International LLC | _PRESIDENT - CEO_ | _1-8-18_ |
| Subcontractor (1st tier) (Print) | Signature and Title | Date |
| | | |
| 2nd tier Subcontractor (Print) | Signature and Title | Date |
| | | |
| 3rd tier Subcontractor (Print) | Signature and Title | Date |
| Fisher Sand & Gravel- New Mexico, Inc. | _VP_ | _1-11-18_ |
| Prime Contractor (Print) | Signature and Title | Date |
| _DAVID M GONZALES_ | Signature | _1/23/18_ Date |
| Project Manager (Print) | | |
| _Joe S. Green_ | Signature | _1/31/18_ Date |
| Assistant District Engineer (Print) | | |

Form No. A-1086
Rev. 2/2016 CCRB
Page 3 of

## New Mexico Department of Transportation
### PERMISSION TO SUBCONTRACT REQUEST ATTACHMENT

Control Number: **4100401R**
Contractor: FISHER SAND & GRAVEL - NEW MEXICO, INC.
Subcontractor: Malcolm International LLC                              No: **7**

### WORK TO BE SUBCONTRACTED

| Line No. | Item No. | Item Description | Subcontracted Amount |
|----------|----------|------------------|----------------------|
| 0330 | 621000 | Mobilization (partial) | $ 752,090.28 |
| 0670 | 511030 | Structural Concrete Class A | $ 594,075.00 |
| 0680 | 512003 | High Performance Concrete HPD | $ 60,024.00 |
| 0690 | 512004 | High Performance Concrete HPD Mod | $ 2,169,230.00 |
| 0700 | 514042 | Concrete Barrier Railings 42" | $ 229,220.00 |
| 0710 | 515000 | Reinforced Concrete for Minor Structures | $ 9,500.00 |
| 0720 | 529002 | Disc Bearing (Guided) | $ 28,880.00 |
| 0730 | 529003 | Disc Bearing Device (Free) | $ 21,220.00 |
| 0740 | 531001 | Permanent Anti Graffiti Protective Coating | $ 25,611.12 |
| 0750 | 540060 | Reinforcing Bars Grade 60 | $ 598,457.60 |
| 0760 | 540160 | Epoxy Coated Reinforcing Bars Grade 60 | $ 1,084,101.00 |
| 0770 | 555000 | Cast In Place Segmental Bridge Constr | $ 3,471,584.00 |
| 0790 | 562000 | Bridge Joint Strip Seal | $ 20,880.00 |
| 0800 | 564000 | Preformed Closed Cell Foam Bridge Joints | $ 20,554.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Total Subcontracted Amount | $ 9,085,427.00 |

Original Contract amount: $ 20,656,000.00

| | |
|---|---|
| % subcontracted from Contract amount: | 43.984% |
| Previous amount subcontracted under this Contract: | $ 824,903.80 |
| Total amount subcontracted to date: | $ 9,910,330.80 |
| Total % subcontracted to date: | 47.978% |

Note: All calculations of subcontracted amounts and percentages shall only be for first (1st) tier contracts. All other tiers will still need items listed above.



## FISHER SAND & GRAVEL – NEW MEXICO, INC
PO BOX 2340    Placitas, NM 87043
Phone: (505) 867-2600    Fax: (505) 867-1609

**SUBCONTRACTOR:**   **Malcolm International LLC**
**3286 Fitzgerald Rd., Rancho Cordova, CA 95742**
**TELEPHONE:  916-287-9099**

**OWNER:**   **New Mexico Department of Transportation**

**PROJECT:**   **CN: 4100401R**
**US 54, MP 324.9 to MP 326.3**
**Quay County, New Mexico**
**Fisher Project # 17354**

| Fisher Sand & Gravel-New Mexico Inc. | Malcolm International LLC |
|---|---|
| Contractor | Subcontractor |
| By: _____ | By: _____ |
| Signature | Signature |
| _____V P_____ | _PRESIDENT - CEO_ |
| Title | Title |
| _1 - 11 - 18_ | _1-8-18_ |
| Date | Date |

This Subcontract consists of this Signature Page and the following Attachments:
A.   Standard Subcontract Provisions
B.   Schedule A - Scope of Work and Subcontract Unit Prices
C.   New Mexico State Special Provisions
D.   Certificate of Insurance Requirements
E.   EEO, Anti Trust, Lobbying (if applicable) Attachments
F.   FHWA 1273 and Wage Decision

In consideration of the mutual promises made herein this _8_ day of _JAN_, 201_8_ Fisher Sand & Gravel Co. dba Southwest Asphalt Paving ("Contractor"), and Malcolm International LLC ("Subcontractor"), enter into this agreement (the "Subcontract") and agree as follows:

**Attachment C**
**Schedule of Subcontract Unit Prices and Scope of Work**

Malcolm International, LLC
3286 Fitzgerald Rd
Rancho Cordova, CA 95742
916-287-9099

Project No.      4100401R
FSG-NM Job No.      17354

| Item No. | Item Description | Units | Quantity | Unit Price | Amount |
|---|---|---|---|---|---|
| 621000 | Mobilization | LS | 1 | $ 752,090.28 | $ 752,090.28 |
| 511030 | Structural Concrete, Class AA | CY | 1,335 | $ 445.00 | $ 594,075.00 |
| 512003 | High Performance Concrete (HPD) | CY | 122 | $ 492.00 | $ 60,024.00 |
| 512004 | High Performance Concrete (HPD) Modified | CY | 3,262 | $ 665.00 | $ 2,169,230.00 |
| 514042 | Concrete Barrier Railings 42" | LF | 1,570 | $ 146.00 | $ 229,220.00 |
| 515000 | Reinforced Concrete for Minor Structures | CY | 5 | $ 1,900.00 | $ 9,500.00 |
| 529002 | Disc Bearing (Guided) | Each | 2 | $ 14,440.00 | $ 28,880.00 |
| 529003 | Disc Bearing Device (FREE) | Each | 2 | $ 10,610.00 | $ 21,220.00 |
| 531001 | Permanent Anti-Graffiti Protective Coating | SF | 18,036 | $ 1.42 | $ 25,611.12 |
| 540060 | Reinforcing Bars Grade 60 | LB | 460,352 | $ 1.30 | $ 598,457.60 |
| 540160 | Epoxy coated Reinforcing Bars Grade 60 | LB | 582,850 | $ 1.86 | $ 1,084,101.00 |
| 555000 | Cast-IN-Place Segmental Bridge Construction | LS | 1 | $ 3,471,584.00 | $ 3,471,584.00 |
| 562000 | Bridge Joint Strip Seal | LF | 90 | $ 232.00 | $ 20,880.00 |
| 564000 | Preformed Closed Cell Foam Bridge Joints | LF | 86 | $ 239.00 | $ 20,554.00 |

Total Subcontract Amount $ 9,085,427.00

OTHER PROVISIONS

The above prices include all labor, equipment and materials to construct the items in accordance with the project plans and specifications. A Certificate of Insurance must be submitted by the Subcontractor which includes Fisher Sand & Gravel - New Mexico, Inc. as an additional insured. No payment will be made to the Subcontractor unless Certified Payroll is up to date. Inclusions and Exclusions of the quote are incorporated.

Quote excludes lay-out, sweeping, traffic control, remove of temp.markings, or removal of curing compound on concrete surfaces.

## ATTACHMENT A
### STANDARD SUBCONTRACT PROVISIONS

ARTICLE 1. The Subcontractor shall furnish all materials, supplies, and equipment and perform all supervision and labor required for the completion of the phase of the project identified on the Signature Page, and as itemized in Attachment B. All work shall be performed in accordance with the provisions of the Original Contract between the Contractor and the Owner, and all specifications, plans, or other documents referred to therein, to the extent that they apply to Subcontractor's work. Such work shall be performed to the satisfaction of the Contractor and the Owner's Engineer or other authorized representative in charge of inspecting the results of the Subcontractor's work. The Contractor may supervise the Subcontractor's work to the extent necessary to coordinate work among subcontractors and to make sure that the results accomplished by any one subcontractor are consistent with Contractor's overall goals and standards. To the extent applicable, Subcontractor shall comply with and be governed by all administrative and regulatory requirements of the Original Contract in its work as if it was the Contractor in that Contract. All of the Original Contract Documents are hereby made a part of this Subcontract. If any provision of the Original Contract is inconsistent with any provision of this Subcontract, the provisions of the Subcontract shall govern. The Contract Documents shall be made available to the Subcontractor upon its request prior to and at any time subsequent to signing this Subcontract.

ARTICLE 2. Time is of the essence, and the Subcontractor agrees to commence work in the field at such points as the Contractor may designate. Subcontractor shall continue diligently in the performance of its work and shall within five (5) calendar days after being notified by Contractor to do so, fully complete it in accordance with the Contractor's construction schedule. That schedule may be changed by Contractor at its discretion as work progresses on the project, provided that the length of time for Subcontractor's performance shall not be shortened without its consent. In the event the Owner or the Contractor schedules a preconstruction conference, the Subcontractor will be required to attend unless excused by the Contractor. Subcontractor shall be responsible for the preparation, submittal and accuracy of all shop drawings or other technical information or approvals that relate to the Subcontract Work that must be prepared and submitted to Owner. All documents and information shall be submitted to Contractor in a form and manner required by Contractor and in sufficient time to allow Contractor to review and send it to Owner. (a) DELAYS. The Subcontractor shall not be entitled to an extension of time for performing and completing its work except to the extent and on the terms actually allowed to the Contractor by the Owner under the terms of the Original Contract. Contractor shall have no obligation to seek any such extensions on behalf of Subcontractor. (b) DAMAGES FOR DELAY IN COMPLETION. It is expressly agreed that time is of the essence of this Subcontract, and Subcontractor agrees to perform the work within the time and in the manner specified, or within the time of such extensions as may be granted. Subcontractor shall be liable for any damages suffered by Contractor due to failure of Subcontractor to perform the work within the time specified, including ~~but not restricted to that portion of liquidated damages asserted against Contractor by the Owner for such delay period as Contractor finds is attributable to~~ Subcontractor's late performance. Subcontractor shall not be liable for such damages if the Contractor is the cause of such delay. No claims shall be asserted by Subcontractor against Contractor or Owner for delays ~~they may cause in Subcontractor's work.~~ Subcontractor shall not be entitled to any extra compensation from Contractor for any suspension, delay, or acceleration, regardless of who is responsible for same, unless specifically agreed to in writing by the Contractor ~~and the Contractor actually receives payment from the Owner for any additional costs incurred by Subcontractor.~~

ARTICLE 3. The Contractor agrees to pay the Subcontractor for the performance of its work, and to make monthly partial payments for work performed under this Subcontract when it is paid for the work by the Owner. The Contractor will pay Subcontractor for completed and accepted quantities at the unit prices set forth in the Schedule of Items. Subcontractor shall submit timely applications for such payments, with all supporting documentation required by Contractor or Owner. The monthly payments will equal the value of the work done by the Subcontractor according to the Owner's estimate less the sum of previous payments and less the retainage withheld by owner between 5% - 10 % additionally, the Contractor may deduct from any amounts due to the Subcontractor an amount sufficient to protect itself from loss on account of (a) Defective workmanship, equipment or material not remedied or replaced by Subcontractor. (b) Reduction in the Contract Price because of pending changes. (c) Claims filed, or reasonable evidence indicating probable filing of claims for which the Subcontractor is responsible. (d) Failure of Subcontractor to make payments properly to its subcontractors, suppliers and manufacturers, or for equipment, material or labor. (e) Damage to other contractors. (f) Any other violation of or failure to comply with the provisions of the Contract Documents, including failure to clean up or submit acceptable compliance submittals and failure to comply with safety requirements. (g) Failure to diligently prosecute the work, as directed by the Contractor, or as agreed upon in the progress schedule. When all grounds for withholding payments are removed, payment of the withheld funds will then be made.

ARTICLE 4. PAYMENT FOR LABOR AND SUPPLIES. The Subcontractor shall promptly make payments to all persons supplying it with labor, equipment, materials, and supplies for its work. Subcontractor shall pay when due all pertinent Federal and State payroll taxes. Any payments not so made by the Subcontractor when earned or due may be made by the Contractor directly to the creditor or in the form of a two party check in the name of the Subcontractor and its creditor. All amounts so paid by Contractor shall be deducted from the first amounts due the Subcontractor, or shall be paid to Contractor on demand if no funds are due to Subcontractor. Subcontractor shall indemnify and defend the Contractor and the Owner from any claim, demand, action, cost or expense by reason of the Subcontractor's failure to make payments for labor, equipment, materials and supplies. Subcontractor and the Surety on the bond accompanying this Subcontract shall, at their expense, appear in and defend for and on behalf of the Contractor and the Owner any action or suit brought to enforce the collection thereof

ARTICLE 5. BASIS AND SCOPE OF PAYMENT. Upon the satisfactory completion of the Original Contract and payment therefore in full by the Owner, the Subcontractor will be paid any remaining amounts due under this Subcontract. Before final payment, Subcontractor shall submit evidence to Contractor that all payrolls, materials bills, and any other debts connected with Subcontractor's work have been paid. Final payment shall release the Contractor from any further obligation or liability under this Subcontract. Subcontractor shall, prior to final payment execute and deliver to Contractor a full release on a form provided by Contractor, releasing Contractor and Owner from all claims in any manner connected with this Subcontract and Subcontractor's work on the project. The estimates made by the Owner, as to the amount of work done by the Subcontractor shall conclusively establish the amount of work done by the Subcontractor. The Subcontractor shall receive no compensation for any work done by it which is not approved and accepted by the Owner.

ARTICLE 6. PERFORMANCE AND PAYMENT BONDS. The Subcontractor shall provide Performance and Payment Bonds in the amount of this Subcontract. If Subcontractor fails to provide these bonds within 30 days after the effective date of this Subcontract the Contractor may terminate this Subcontract pursuant to ARTICLE 8, or alternatively the Contractor may exercise either or both of the following remedies. (a) Contractor may increase the retainage under ARTICLE 3 to 20%. (b) The Contractor may issue two party checks to all laborers, suppliers, or materialmen in the name of the Subcontractor and the creditor. The Subcontractor agrees to provide copies of invoices and or statements for any materials or services used to complete its work as such invoices and or statements are received by the Subcontractor. If complete bonding is not obtainable, but Contractor elects to proceed with this Subcontract, Subcontractor shall still use its best efforts to obtain bonds as close as possible to the Subcontract price.

ARTICLE 7. INSURANCE. Subcontractor shall procure and maintain, during the period that this Subcontract remains in force and for three years following completed operations, insurance coverage with limits of not less than those set forth in the Attachment C D. In the event any work to be performed under this Subcontract is further sublet, the Subcontractor will require the same insurance coverage and limits from its lower tier subcontractors, and will require said lower tier subcontractors to certify insurance coverage to the Contractor, prior to the commencement of any work. If Subcontractor shall fail to certify required insurance coverage to the Contractor as set forth above, the Contractor may, at its option, obtain insurance of the character, nature and limits described above to cover the operations of the Subcontractor, paying the premiums for the same and charging same to the Subcontractor. The Contractor, by requiring the foregoing minimum insurance coverage, will not be deemed to limit any of the other obligations or liabilities of the Subcontractor. Deductibles, if any, will be for the account and responsibility of the Subcontractor.

ARTICLE 8. TERMINATION FOR DEFAULT. If the Subcontractor fails to commence the work within the specified time, fails to prosecute its work continuously with sufficient supervision, workmen and equipment to insure its completion within the time scheduled for completion, fails to perform in a safe manner, fails to comply with any material provisions of this Subcontract, or if Subcontractor makes an assignment of this Subcontract, the Contractor may elect to give notice in writing of such default. If the Subcontractor, within a period of five (5) days after such notice is mailed or transmitted by facsimile machine to Subcontractor shall not cure its default then the Contractor shall have fall power and authority, without process of law and without violating this Subcontract, to take the prosecution of the work out of the hands of the Subcontractor. Contractor may then complete the work with its own forces, or contract with other parties for its completion, or use such other measures as in the Contractor's opinion are necessary for its completion, including the use of the equipment, plant and other property of the Subcontractor on the project location. Neither by the taking over of the work nor by its completion, in accordance with the terms of this provision, shall the Contractor forfeit its right to recover damages from the Subcontractor or from Subcontractor's surety for failure to complete or for delay in such completion. Should the expense incurred by the Contractor in taking over and completing the work be less than the sum that would have become payable under this Subcontract if said

work had been completed by the Subcontractor, then the Subcontractor shall be entitled to the difference. If the expense exceeds that sum, then the Subcontractor and Subcontractor's surety shall be liable to the Contractor for the amount of such excess. Upon the taking over of the work by the Contractor, no further payment will be made to the Subcontractor until the work is completed, and any moneys due or that may become due the Subcontractor under this Subcontract will be withheld and may be applied by the Contractor to payments of labor, materials, supplies and equipment used in the prosecution of the work, for the payment of rental charges on equipment, and to the payment of any excess cost to the Contractor of completing the work. An improper termination for default shall be considered a termination for convenience.

ARTICLE 9. TERMINATION FOR CONVENIENCE. The Contractor, upon two days advance written notice by personal delivery, email, or facsimile transmission, may terminate this Subcontract in whole or in part when Contractor considers termination to be in its best interest. Subcontractor will be compensated only for the work performed and materials furnished, as paid by the Owner, but shall receive no compensation for unperformed work. In no event shall the total sum paid the Subcontractor exceed the Subcontract price.

ARTICLE 10. CHANGES IN THE CONTRACT. The Contractor or the Owner may at any time by written order and without notice to the Subcontractor's sureties, make changes in, additions to or omissions from the work to be performed under this Subcontract. The Subcontractor shall promptly proceed with the performance of this  Subcontract as so changed. If the change is for work not itemized on Schedule C, any increase or decrease in the Subcontract price resulting from such changes shall be agreed upon in writing by the parties hereto prior to the performance of the work. Any changes in quantities itemized on Schedule C shall cause an adjustment in the Subcontract price at the unit prices set forth on that Schedule. The Contractor will pay for extra work performed and materials furnished by the Subcontractor, as and when it is paid therefore by the Owner.

ARTICLE I 1. JOB CONDITIONS. It is distinctly understood and agreed by Subcontractor that this Subcontract is made for the consideration herein named, and that the Subcontractor has, by examination, satisfied itself as to the nature and location of the work, the character, quantity and kind of materials to be encountered, the character, kind and quantity of equipment needed during the prosecution of the work, the location, conditions and other matters which can in any manner affect the work under this Subcontract. Actual quantities of material required for the completion of Subcontractor's work may vary from the Owner's or Contractor's estimates. If the work in Schedule C is quoted in unit prices, this shall be a Unit Price Contract. Total payment to Subcontractor will depend on final quantities paid by the Owner, even if no change orders are issued for the increased or decreased quantities. Subcontractor assumes risks connected with its work, including, but not limited to, labor difficulties, concealed conditions on the project site, weather, and the availability of equipment and materials.

ARTICLE 12. ENTIRE AGREEMENT AMENDMENTS. No verbal agreement with any agent either before or after the execution of this Subcontract shall affect or modify any of the terms or obligations herein contained, and this contract shall be conclusively considered as containing and expressing all of the terms and conditions agreed upon by the parties hereto. No changes, amendments or modifications of such terms or conditions shall be valid or of any effect unless reduced to writing and signed by the parties hereto.

ARTICLE 13. SETTLEMENT OF CONTROVERSIES. In case of any disputes between the Subcontractor and the Contractor, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner, both by the terms of the Original Contract and by any and all decisions or determinations made thereunder. It is agreed that in the event the Original Contract contains a provision whereby claims may be resolved under an administrative procedure or by arbitration, then as to any claims between the parties, as to any claims of Subcontractor on account of acts or omissions of the Owner, or as to claims of the Owner against the Contractor related to causes for which the Subcontractor is responsible, the Subcontractor will participate in and be bound by the results of the administrative procedure or arbitration. Contractor shall have the option to present such claims upon Subcontractor's behalf, however, Subcontractor shall nevertheless have full responsibility for preparation of such claims and shall bear all expenses thereof, including attorney's fees. Subcontractor shall be bound by any and all determinations rendered pursuant to this provision, notwithstanding its failure or refusal to participate therein and agrees that it will suspend or not take any other action or actions with respect to any such claims and will pursue no independent litigation with respect thereto, pending such determinations, Subcontractor shall not be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from the Owner on account of Subcontractor's work, less any markups or costs incurred by the Contractor to which Contractor is otherwise entitled. Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of all claims for or on account of acts or omissions of the Owner.

ARTICLE 14. WAIVER OF LIENS. It is agreed that no lien or statement of claim shall at any time be filed against the premises upon which the work is performed, or any part thereof, by Subcontractor or any of his subcontractors or

other person employed by or furnishing labor, services, equipment, or materials to Subcontractor or any of his subcontractors for, in or about the performance of the work. This clause will be inserted in all of Subcontractor's purchase orders and his subcontract agreements.

ARTICLE 15. AUDIT AND INSPECTION. As to all work which Subcontractor may perform on a reimbursable basis, Contractor will have the right at reasonable times and places, to inspect, copy and audit any of Subcontractor's books, accounts, time cards, records of transactions, estimates, schedules, correspondence or any other records or documents which may have a possible bearing on the performance of such work. Further right of examination for all of Subcontractor's work will include inspection at all reasonable times of the Subcontractor's plant, or such parts thereof as may be engaged in the performance of the Subcontract. All accounts, documents and records relevant to this Subcontract will be retained by the Subcontractor for three years after completion of the work, unless a longer period is required by law or by the Original Contract.



ARTICLE 16. OTHER SUBCONTRACTS. The Subcontractor shall cooperate fully with other subcontractors employed on the work, and shall so plan and conduct the work to be performed hereunder as not to interfere with their operations or with those of the Contractor, and shall take necessary precautions to properly protect the finished work of other parties. The Contractor will not be responsible for any delays or interference resulting from the acts or operations of other subcontractors. In the event that the subcontractor does sublet the work, the subcontractor shall bind lower tier subcontractors and suppliers to full compliance with the contract documents.

ARTICLE 17. INDEMNIFICATION. Subcontractor Performance. Assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of, resulting from or in any manner connected with, the execution of the Work and including, without limitation, those damages or injuries occurring or resulting from the use by Subcontractor, its agents or employees, of materials, services, equipment, instrumentalities or other property, whether the same be owned by Contractor, Subcontractor, or others. Subcontractor, to the fullest extent permitted by law, also agrees to indemnify and save harmless Contractor, its agents and employees from all claims caused by Subcontractor's negligence and for Contractor's vicarious liability or liability imposed by warranty arising out of the acts or omissions of the Subcontractor. Further, Subcontractor agrees to defend Contractor, its agents and employees from all claims including, without limitation, claims for which Contractor may be or may be claimed to be liable and to pay all legal fees and disbursements paid or incurred by Contractor in defense of such claims or to enforce the provisions of this paragraph as permitted by law. Subcontractor further agrees to obtain, maintain and pay for such Commercial General Liability Insurance coverage that will insure the provisions of this paragraph, to the extent coverage is provided by the types and limits of insurance specified in Insurance Rider and as permitted by law.



ARTICLE 18. SAFETY AND ACCIDENT PREVENTION. The Subcontractor will provide, erect and maintain necessary and proper warning signals, signs, lights, barricades, and fences on and along the line of the Subcontract work, and shall take all other necessary precautions for the protection of its work and the safety of its employees and the public. Subcontractor agrees to take all reasonable and prudent steps necessary or likely and to cooperate with Contractor in efforts to prevent injuries to workers employed by either party in carrying on operations covered by this Subcontract, and to adopt and place in effect such reasonably practical suggestions as may be offered by the Contractor, including compliance with Contractor's Safety Program, to promote safety and safe working conditions. Subcontractor will at all times maintain its equipment in a safe operating condition. Subcontractor agrees to cooperate with Contractor in efforts to prevent injuries to the public in carrying on operations covered by this Subcontract. In the event the subject of this Subcontract requires special our unusual traffic control items or requirements, other than those specified in the plans and specifications, which are necessary for the safety of the motoring public, Subcontractor shall immediately advise Contractor. Also, in the event Subcontractor has knowledge or becomes aware of potentially hazardous conditions affecting the public or any workers on the project, Subcontractor shall immediately advise Contractor. In the event of Subcontractor's noncompliance with any established safety or health regulation, Contractor shall notify Subcontractor in writing of such noncompliance. If the Subcontractor refuses to take appropriate corrective action, Contractor shall have the right to stop the Subcontractor's work or any portion thereof, suspend progress payments for the Subcontract work and correct the situation itself and back charge all costs of such actions to Subcontractor. The Subcontractor agrees, in performance of this Subcontract to observe and comply with all applicable federal, state, local and project safety rules and regulations. The Subcontractor agrees to indemnify and hold Contractor and Owner harmless for and from any loss, including but not limited to any fines, penalties and corrective measures, Contractor or Owner may sustain by reason of Subcontractor's failure to comply with said laws, rules and regulations, or failure of Subcontractor to notify Contractor of special or unusual traffic control items required under the circumstances, in connection with the performance of the Subcontract. The Subcontractor will notify the Contractor of any injury or property damage accidents involving Subcontractor's personnel or equipment working on this project site within three (3) days of the occurrence. The Subcontractor will provide, erect and maintain necessary and proper warning signals, signs, lights,

barricades and fences on and along the line of the Subcontract work and the safety of its employees and the public, and shall bear exclusive liability for, and indemnify and hold Contractor harmless under Article 17 of this Contract for, its failure to take such precautions.

ARTICLE 19. SUBLETTING AND ASSIGNMENT. The work shall be performed by the Subcontractor with the assistance of workmen under his immediate supervision and shall not be sublet, assigned or otherwise disposed of, in whole or in part, except with the written consent of the Contractor. In the event that the Subcontractor does sublet the work, the subcontractor shall bind lower tier subcontractors and suppliers to full compliance with the Contract Documents. The Subcontractor shall not sell, assign or otherwise dispose of money earned under this Subcontract without the written consent of Contractor until all claims for labor, materials and supplies furnished to Subcontractor have been paid.

ARTICLE 20. TAXES. The Subcontractor shall be responsible for payments of taxes, contributions and premiums payable on his employees or on his operations under workmen's compensation laws, unemployment compensation laws, the Federal Social Security Act, health and welfare benefit plans, gross business taxes, sales and use taxes and any other taxes, contributions and premiums which become payable by operation of law or contract, including contributions payable by the employees. Subcontractor shall indemnify and defend the Contractor and Owner from all liability, loss and expenses resulting from the Subcontractor's failure to comply with all requirements of such laws or contracts. The Subcontractor agrees to comply with any rules and regulations at any time applicable to this provision.

ARTICLE 21. LICENSING AND PREQUALIFICATION REQUIREMENTS. Subcontractor and its employees shall at all times observe and comply with all applicable laws, regulations, and codes of the United States and of any state or political subdivision having jurisdiction of the place where any work hereunder is being done and with all rules and regulations of the Contractor and Owner. Subcontractor warrants that it is authorized and licensed to do business within the State where the project is located and has obtained the required prequalification.

ARTICLE 22. AUTHORIZED REPRESENTATIVE. Prior to commencement of its work hereunder, the Subcontractor will designate a competent, authorized representative to represent and act for the Subcontractor and will inform the Contractor in writing of the name, qualifications, experience and address of such proposed representative who, upon written approval by the Contractor, will have complete authority to represent and act for the Subcontractor. Such representative will be present at the site of work at all times when work is actually in progress.

ARTICLE 23. COMPLETED OPERATIONS. The Subcontractor shall be responsible for all work performed and equipment and materials furnished to or by the Subcontractor under this Subcontract until the Subcontract work is completed and has been accepted by the Contractor. In the event of loss, damage or destruction of such work, equipment or materials, the Subcontractor at his sole expense shall promptly repair, restore or replace such to the satisfaction of the Contractor. The Subcontractor agrees to guarantee his work against all defects of materials and/or workmanship as called for in the plans, specifications and addenda or if no guarantee is called for, then for a period of one year from the dates of partial or total acceptance of the Subcontractor's work by the Owner.

ARTICLE 24. EQUAL EMPLOYMENT OPPORTUNITY. The provisions of the Equal Opportunity Clause set forth at 41 CFR 60-1.4(a) are incorporated herein by reference and are made applicable to the Subcontractor if the amount of this Subcontract exceeds .

ARTICLE 25. CLEAN UP. Subcontractor will clean up and remove from the site as directed by the Contractor all rubbish and debris resulting from its work and shall clean up to the satisfaction of the Contractor, dirt, grease, machine marks, etc., from shoulders, roadways, bridge decks, yard areas, etc. deposited or placed by or resulting from its work. In the event the Subcontractor refuses to clean up as stated above, Contractor, after 24 hours' notice to Subcontractor, reserves the right to do the clean-up and charge the Subcontractor the cost thereof plus overhead.

ARTICLE 26. ATTORNEYS' FEES. If it shall be necessary for the Contractor to bring suit or undertake arbitration to enforce any of the provisions of this Subcontract Contractor shall be entitled to reasonable attorneys' fees in addition to any judgment or award it receives.

ARTICLE 27. ASSIGNS. It is mutually agreed that this Subcontract shall bind the heirs, executors, administrators, successors and assigns of the parties hereto.

**ATTACHMENT C**
**SPECIAL PROVISIONS**
**NEW MEXICO STATE HIGHWAY DEPARTMENT CONTRACTS**

1. Form FHWA-1273 -Required Contract Provisions Federal-Aid Construction Contracts.

2. Equal Employment Opportunity (E.E.O.) Affirmative Action Requirement (Executive Order 11246)

3. Standard Federal Equal Employment Opportunity Construction Contract Specifications (Executive Order 1 1246).

4. Notice to Contractors Modifying Standard Federal Equal Employment Opportunity Construction Contract Specifications

5. Area Wage Decision for ALL Federal-Aid Projects.

6. Special Provision - Specific Equal Employment Opportunity Responsibilities (23 U.S.C. 140).

7. Minimum Wage Rates (State of New Mexico).

8. Federal-Aid Proposal Notices - Notices to Prospective Federal-Aid Construction Contractors.

9. Special Provisions Disadvantaged Business and Women Business Enterprise Participation in Highway Construction.

10. Training Special Provisions.

11. Notice to Contractors - RE- Wage Rates.

12. Special Provisions for Submission of Weekly Payrolls on all Projects.

13. Special Provisions for Apprentices.

14. Assignment of Antitrust Claims Form, to be completed and signed by the Subcontractor and returned to the Contractor.

15. Special Provision Certification for Disadvantaged Business and Women Business Enterprise Participation in Highway Construction Contract Goals (A-585).

16. Certification with Regard to the Performance of Previous Contracts or Subcontracts Subject to the Equal Opportunity Clauses and the Filing of Required Reports, to be completed and signed by the Equal Opportunity Clauses and the Filing of Required Reports, to be completed and signed by the Subcontractor and returned to the Contractor (Form A-571). Required only if DBE goals are established for the project.

17. All work shall be conducted in strict accordance with OSHA, State and Local codes. The Subcontractor shall conduct at a minimum every other week E.E.O. and Safety Tool Box meetings. Copies of minutes and rosters from these meetings shall be provided to the Contractor on a regular and timely basis.

18. Subcontractor will comply with all Federal, State and Local laws and ordinances applicable to construction and will give proper notice relating to the work to the proper authorities and will secure and pay for all necessary licenses or permits to carry on the work as described in Attachment C as applicable to this Subcontract. Subcontractor must indicate the following information:

Contractor's License No. 1025593    Type GENERAL ENGINEERING

19. Contractor's Equal Employment Opportunity Compliance Specifications.

20. Contractor's Affirmative Action Plan Subscription Form to be completed by Subcontractor only if the Subcontractor does not have an approved E.E.O. Policy, or the Subcontractor wishes to use Contractor's E.E.O. Policy.

## DIRECTIONS TO SUBCONTRACTORS CONCERNING EEO REQUIREMENTS

As a subcontractor, you have the same contract requirements as the prime contractor to comply with all aspects of E.E.O. and Affirmative Action specifications. As the prime contractor, we will be monitoring your monthly PR1391 forms or certified payrolls for compliance with E.E.O. and Affirmative Action specifications. Even if your company is a Minority Owned Business, you still must comply.

First, you must know the contractor hiring goals for minorities and females. Minority hiring goals reflect the minority population of the area and Female hiring goals are usually 6.9%. The goals for

Project  4100401R_____ are:  Minority ____45.9__ %    Female _____6.9____ %

Compliance with these hiring goals are measured by trade. Therefore, minorities and women must be distributed throughout your crews as operators, laborers, or drivers as your work requires. If you only work one trade, then you are only measured according to the trade you work. Please review the enclosed PR1391 for your anticipated crew.

If you know the makeup of your anticipated crew will not be in compliance with the hiring goals, you will need to make a good faith effort to comply. Good faith effort will include, but not be limited to, the following:

1. Any new hires should be from the group(s) you are short in.
2. You should contact agencies who refer either minority or female workers when you have a vacancy.
3. You should contact a local Job Service Center and make a specific request for either a minority or female applicant.
4. You do not have to hire unqualified people; however, you must make a good faith effort and you MUST DOCUMENT YOUR EFFORTS. Write down what you do concerning EEO in a daily diary.

DISSEMINATION

You must on a regular basis tell your employees about your E.E.O. and Affirmative Action Program. This can be done at regularly scheduled Tool Box meetings. Make up an agenda for each meeting, have each employee sign a roster indicating that they were in attendance, and summarize the subjects discussed.

If you have any questions concerning your E.E.O. responsibilities, please call Jen Messer at 800-932-8740.

**ATTACHMENT D - INSURANCE RIDER**

*Subcontractor shall obtain insurance with limits at least equal to those specified below (coverage is required on checked items.)*

| | TYPE OF INSURANCE | LIMITS OF LIABILITY | |
|---|---|---|---|
| ☒ | **COMMERCIAL GENERAL LIABILITY** | *ISO form CG 00 01 10 01 edition or its equivalent* | |
| | Occurrence Form | Bodily Injury/Property Damage (CSL) | |
| | Premises/Operations | Each Occurrence | $1,000,000 |
| | Products/Completed Operations | General Aggregate | $2,000,000 |
| | Contractual Liability | Products Comp/OPS Aggregate | $2,000,000 |
| | Independent Contractors | Personal & Advertising Injury | $1,000,000 |
| | Personal Injury | | |
| | Explosion/Collapse/Underground Coverage (XCU) | General Aggregate Applies Per Project | |
| ☒ | **AUTOMOBILE** | *ISO form CA 00 01 10 01 edition or its equivalent* | |
| | Any Automobile | Bodily Injury/Property Damage (CSL) | $1,000,000 |
| | Hired Automobiles | | |
| | Non-Owned Automobiles | MCS 90 (if required) to full limits required by law. | |
| ☒ | **UMBRELLA LIABILITY** | | |
| | | Each Occurrence | $5,000,000 |
| | | Aggregate | $5,000,000 |
| ☒ | **WORKERS' COMPENSATION AND EMPLOYERS LIABILITY** | | |
| | (Must Extend To Every Employee, Including Owners) | Coverage "A" | Statutory |
| | | Coverage "B" | |
| | | - Each Accident | $1,000,000 |
| | | - Disease - Policy Limit | $1,000,000 |
| | | - Disease - Each Employee | $1,000,000 |
| ☒ | **POLLUTION LIABILITY** | | |
| | To include non-owned disposal site & 3rd party transportation cover. If Policy is Claims Made, Effective Date Must be Prior to Start of Work, and Kept in Place for at Least 2 years after Completion of Work. | Each Occurrence | $1,000,000 |
| ☒ | **PROFESSIONAL LIABILITY** | | |
| | Effective Date Must be Prior to Start of Work, and Kept in Place for at Least 2 years after Completion of Work. | Each Claim Made | $1,000,000 |

Commercial General Liability, Automobile Liability, Umbrella Liability and Pollution Liability (when required) coverage must include Contractor, the Owner and others as required in the Contract Documents, as ADDITIONAL INSUREDS ("Additional Insureds"). The insurance policy(ices) to which this Additional Insured endorsement is added, whether primary, excess or umbrella, shall apply on a primary basis for the Additional Insureds, and the Additional Insured's own CGL and Pollution Liability policies shall be noncontributory.

The General Liability Additional Insured coverage shall be provided by endorsements specifically applicable to the project that is the subject of this Subcontract. The endorsement(s) must be ISO forms CG 2010 & CG 2037 (07-04 editions on both, or their equivalent). Products/Completed Operations coverage shall continue to be purchased for a time period commensurate with the applicable state statute of repose, or statute of limitation if the applicable state does not have a statute of repose, or as long as this coverage remains commercially available to the Subcontractor. Except to the extent project specific Additional Insured endorsements are required by this paragraph, in which case the Additional Insured coverage shall be as broad as permitted by law, such Additional Insured endorsements shall provide coverage to the Additional Insureds for acts or omissions to the extent caused by Subcontractor's negligence and for Contractor's vicarious liability or liability imposed by warranty arising out of the acts or omissions of the Subcontractor. In those states where there are legal restrictions upon Additional Insured coverage, such Additional Insured coverage shall be construed to be in conformity with applicable law and shall be interpreted as broadly as is legally permitted; any offending language shall hereby be considered stricken from the Additional Insured coverage provision. The Automobile Liability Additional Insured endorsement must be ISO form CA 2048 02 99 or its equivalent.

It is understood and agreed that the insurance coverages and limits, required above, shall not limit the extent of the Subcontractor's responsibilities and liabilities specified within the Contract Documents or by law. Limits of liability beyond those required above by Contractor, or any type of insurance not described above which any Subcontractor normally requires for its own protection, or which Subcontractor is required by law to carry, shall be Subcontractor's responsibility and at Subcontractor's own expense.

Subcontractor waives all rights against Contractor and Owner and other parties in the Contract Documents for recovery of damages to the extent these damages are covered by the insurance policies obtained by the Subcontractor as required above. In addition, subcontractor shall cause the insurer(s) issuing the required policies applicable to the work to be endorsed to waive the rights of recovery or subrogation. The General Liability waiver must utilize ISO form CG 24 04 (05-09 edition or the equivalent).

The expense of and deductible amounts applicable within the Builders Risk Policy of insurance (when required in contract documents) covering this project shall be handled in accordance with the terms and conditions of the contract between Owner and Contractor. In the absence of specific conditions, deductible shall be borne by the contractor, subcontractor and supplier in direct proportion as their individual losses bear to the total loss in any occurrence.

The policies obtained and maintained to provide the specified insurance must be placed with carrier(s) maintaining an A-minus or better AM Best rating and provide that the required coverage and limits will not be altered, cancelled or allowed to expire without at least 30 days prior written notice (10 days for non-payment) to Contractor. If scope of work outlined in the Contract Documents includes any operations adjacent, over or below railroad tracks, Subcontractor's insurance coverage must include endorsements CG 24 17 on the General Liability and CA 20 70 on the Automobile Liability, or their equivalents.

**Before beginning any work under this subcontract, SUBCONTRACTOR and SUB-SUBCONTRACTORS will provide to Contractor insurance certificates showing compliance with these insurance specifications.**

FHWA-1273 -- Revised May 1, 2012

**REQUIRED CONTRACT PROVISIONS**
**FEDERAL-AID CONSTRUCTION CONTRACTS**

I.     General
II.    Nondiscrimination
III.   Nonsegregated Facilities
IV.   Davis-Bacon and Related Act Provisions
V.    Contract Work Hours and Safety Standards Act
       Provisions
VI.   Subletting or Assigning the Contract
VII.  Safety: Accident Prevention
VIII. False Statements Concerning Highway Projects
IX.   Implementation of Clean Air Act and Federal Water
       Pollution Control Act
X.    Compliance with Governmentwide Suspension and
       Debarment Requirements
XI.   Certification Regarding Use of Contract Funds for
       Lobbying

ATTACHMENTS

A. Employment and Materials Preference for Appalachian
Development Highway System or Appalachian Local Access
Road Contracts (included in Appalachian contracts only)

**I. GENERAL**

1. Form FHWA-1273 must be physically incorporated in each
construction contract funded under Title 23 (excluding
emergency contracts solely intended for debris removal). The
contractor (or subcontractor) must insert this form in each
subcontract and further require its inclusion in all lower tier
subcontracts (excluding purchase orders, rental agreements
and other agreements for supplies or services).

The applicable requirements of Form FHWA-1273 are
incorporated by reference for work done under any purchase
order, rental agreement or agreement for other services. The
prime contractor shall be responsible for compliance by any
subcontractor, lower-tier subcontractor or service provider.

Form FHWA-1273 must be included in all Federal-aid design-
build contracts, in all subcontracts and in lower tier
subcontracts (excluding subcontracts for design services,
purchase orders, rental agreements and other agreements for
supplies or services). The design-builder shall be responsible
for compliance by any subcontractor, lower-tier subcontractor
or service provider.

Contracting agencies may reference Form FHWA-1273 in bid
proposal or request for proposal documents, however, the
Form FHWA-1273 must be physically incorporated (not
referenced) in all contracts, subcontracts and lower-tier
subcontracts (excluding purchase orders, rental agreements
and other agreements for supplies or services related to a
construction contract).

2. Subject to the applicability criteria noted in the following
sections, these contract provisions shall apply to all work
performed on the contract by the contractor's own organization
and with the assistance of workers under the contractor's
immediate superintendence and to all work performed on the
contract by piecework, station work, or by subcontract.

3. A breach of any of the stipulations contained in these
Required Contract Provisions may be sufficient grounds for
withholding of progress payments, withholding of final
payment, termination of the contract, suspension / debarment
or any other action determined to be appropriate by the
contracting agency and FHWA.

4. Selection of Labor: During the performance of this contract,
the contractor shall not use convict labor for any purpose
within the limits of a construction project on a Federal-aid
highway unless it is labor performed by convicts who are on
parole, supervised release, or probation. The term Federal-aid
highway does not include roadways functionally classified as
local roads or rural minor collectors.

**II. NONDISCRIMINATION**

The provisions of this section related to 23 CFR Part 230 are
applicable to all Federal-aid construction contracts and to all
related construction subcontracts of $10,000 or more. The
provisions of 23 CFR Part 230 are not applicable to material
supply, engineering, or architectural service contracts.

In addition, the contractor and all subcontractors must comply
with the following policies: Executive Order 11246, 41 CFR 60,
29 CFR 1625-1627, Title 23 USC Section 140, the
Rehabilitation Act of 1973, as amended (29 USC 794), Title VI
of the Civil Rights Act of 1964, as amended, and related
regulations including 49 CFR Parts 21, 26 and 27; and 23 CFR
Parts 200, 230, and 633.

The contractor and all subcontractors must comply with: the
requirements of the Equal Opportunity Clause in 41 CFR 60-
1.4(b) and, for all construction contracts exceeding $10,000,
the Standard Federal Equal Employment Opportunity
Construction Contract Specifications in 41 CFR 60-4.3.

Note: The U.S. Department of Labor has exclusive authority to
determine compliance with Executive Order 11246 and the
policies of the Secretary of Labor including 41 CFR 60, and 29
CFR 1625-1627. The contracting agency and the FHWA have
the authority and the responsibility to ensure compliance with
Title 23 USC Section 140, the Rehabilitation Act of 1973, as
amended (29 USC 794), and Title VI of the Civil Rights Act of
1964, as amended, and related regulations including 49 CFR
Parts 21, 26 and 27; and 23 CFR Parts 200, 230, and 633.

The following provision is adopted from 23 CFR 230, Appendix
A, with appropriate revisions to conform to the U.S.
Department of Labor (US DOL) and FHWA requirements.

**1. Equal Employment Opportunity:** Equal employment
opportunity (EEO) requirements not to discriminate and to take
affirmative action to assure equal opportunity as set forth
under laws, executive orders, rules, regulations (28 CFR 35,
29 CFR 1630, 29 CFR 1625-1627, 41 CFR 60 and 49 CFR 27)
and orders of the Secretary of Labor as modified by the
provisions prescribed herein, and imposed pursuant to 23
U.S.C. 140 shall constitute the EEO and specific affirmative
action standards for the contractor's project activities under

1

this contract. The provisions of the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.) set forth under 28 CFR 35 and 29 CFR 1630 are incorporated by reference in this contract. In the execution of this contract, the contractor agrees to comply with the following minimum specific requirement activities of EEO:

a. The contractor will work with the contracting agency and the Federal Government to ensure that it has made every good faith effort to provide equal opportunity with respect to all of its terms and conditions of employment and in their review of activities under the contract.

b. The contractor will accept as its operating policy the following statement:

"It is the policy of this Company to assure that applicants are employed, and that employees are treated during employment, without regard to their race, religion, sex, color, national origin, age or disability. Such action shall include: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship, pre-apprenticeship, and/or on-the-job training."

**2. EEO Officer:** The contractor will designate and make known to the contracting officers an EEO Officer who will have the responsibility for and must be capable of effectively administering and promoting an active EEO program and who must be assigned adequate authority and responsibility to do so.

**3. Dissemination of Policy:** All members of the contractor's staff who are authorized to hire, supervise, promote, and discharge employees, or who recommend such action, or who are substantially involved in such action, will be made fully cognizant of, and will implement, the contractor's EEO policy and contractual responsibilities to provide EEO in each grade and classification of employment. To ensure that the above agreement will be met, the following actions will be taken as a minimum:

a. Periodic meetings of supervisory and personnel office employees will be conducted before the start of work and then not less than once every six months, at which time the contractor's EEO policy and its implementation will be reviewed and explained. The meetings will be conducted by the EEO Officer.

b. All new supervisory or personnel office employees will be given a thorough indoctrination by the EEO Officer, covering all major aspects of the contractor's EEO obligations within thirty days following their reporting for duty with the contractor.

c. All personnel who are engaged in direct recruitment for the project will be instructed by the EEO Officer in the contractor's procedures for locating and hiring minorities and women.

d. Notices and posters setting forth the contractor's EEO policy will be placed in areas readily accessible to employees, applicants for employment and potential employees.

e. The contractor's EEO policy and the procedures to implement such policy will be brought to the attention of employees by means of meetings, employee handbooks, or other appropriate means.

**4. Recruitment:** When advertising for employees, the contractor will include in all advertisements for employees the notation: "An Equal Opportunity Employer." All such advertisements will be placed in publications having a large circulation among minorities and women in the area from which the project work force would normally be derived.

a. The contractor will, unless precluded by a valid bargaining agreement, conduct systematic and direct recruitment through public and private employee referral sources likely to yield qualified minorities and women. To meet this requirement, the contractor will identify sources of potential minority group employees, and establish with such identified sources procedures whereby minority and women applicants may be referred to the contractor for employment consideration.

b. In the event the contractor has a valid bargaining agreement providing for exclusive hiring hall referrals, the contractor is expected to observe the provisions of that agreement to the extent that the system meets the contractor's compliance with EEO contract provisions. Where implementation of such an agreement has the effect of discriminating against minorities or women, or obligates the contractor to do the same, such implementation violates Federal nondiscrimination provisions.

c. The contractor will encourage its present employees to refer minorities and women as applicants for employment. Information and procedures with regard to referring such applicants will be discussed with employees.

**5. Personnel Actions:** Wages, working conditions, and employee benefits shall be established and administered, and personnel actions of every type, including hiring, upgrading, promotion, transfer, demotion, layoff, and termination, shall be taken without regard to race, color, religion, sex, national origin, age or disability. The following procedures shall be followed:

a. The contractor will conduct periodic inspections of project sites to insure that working conditions and employee facilities do not indicate discriminatory treatment of project site personnel.

b. The contractor will periodically evaluate the spread of wages paid within each classification to determine any evidence of discriminatory wage practices.

c. The contractor will periodically review selected personnel actions in depth to determine whether there is evidence of discrimination. Where evidence is found, the contractor will promptly take corrective action. If the review indicates that the discrimination may extend beyond the actions reviewed, such corrective action shall include all affected persons.

d. The contractor will promptly investigate all complaints of alleged discrimination made to the contractor in connection with its obligations under this contract, will attempt to resolve such complaints, and will take appropriate corrective action within a reasonable time. If the investigation indicates that the discrimination may affect persons other than the complainant, such corrective action shall include such other persons. Upon completion of each investigation, the contractor will inform every complainant of all of their avenues of appeal.

**6. Training and Promotion:**

a. The contractor will assist in locating, qualifying, and increasing the skills of minorities and women who are

2

applicants for employment or current employees. Such efforts should be aimed at developing full journey level status employees in the type of trade or job classification involved.

b. Consistent with the contractor's work force requirements and as permissible under Federal and State regulations, the contractor may make full use of training programs, i.e., apprenticeship, and on-the-job training programs for the geographical area of contract performance. In the event a special provision for training is provided under this contract, this subparagraph will be superseded as indicated in the special provision. The contracting agency may reserve training positions for persons who receive welfare assistance in accordance with 23 U.S.C. 140(a).

c. The contractor will advise employees and applicants for employment of available training programs and entrance requirements for each.

d. The contractor will periodically review the training and promotion potential of employees who are minorities and women and will encourage eligible employees to apply for such training and promotion.

**7. Unions:** If the contractor relies in whole or in part upon unions as a source of employees, the contractor will use good faith efforts to obtain the cooperation of such unions to increase opportunities for minorities and women. Actions by the contractor, either directly or through a contractor's association acting as agent, will include the procedures set forth below:

a. The contractor will use good faith efforts to develop, in cooperation with the unions, joint training programs aimed toward qualifying more minorities and women for membership in the unions and increasing the skills of minorities and women so that they may qualify for higher paying employment.

b. The contractor will use good faith efforts to incorporate an EEO clause into each union agreement to the end that such union will be contractually bound to refer applicants without regard to their race, color, religion, sex, national origin, age or disability.

c. The contractor is to obtain information as to the referral practices and policies of the labor union except that to the extent such information is within the exclusive possession of the labor union and such labor union refuses to furnish such information to the contractor, the contractor shall so certify to the contracting agency and shall set forth what efforts have been made to obtain such information.

d. In the event the union is unable to provide the contractor with a reasonable flow of referrals within the time limit set forth in the collective bargaining agreement, the contractor will, through independent recruitment efforts, fill the employment vacancies without regard to race, color, religion, sex, national origin, age or disability; making full efforts to obtain qualified and/or qualifiable minorities and women. The failure of a union to provide sufficient referrals (even though it is obligated to provide exclusive referrals under the terms of a collective bargaining agreement) does not relieve the contractor from the requirements of this paragraph. In the event the union referral practice prevents the contractor from meeting the obligations pursuant to Executive Order 11246, as amended, and these special provisions, such contractor shall immediately notify the contracting agency.

**8. Reasonable Accommodation for Applicants / Employees with Disabilities:** The contractor must be familiar

with the requirements for and comply with the Americans with Disabilities Act and all rules and regulations established there under. Employers must provide reasonable accommodation in all employment activities unless to do so would cause an undue hardship.

**9. Selection of Subcontractors, Procurement of Materials and Leasing of Equipment:** The contractor shall not discriminate on the grounds of race, color, religion, sex, national origin, age or disability in the selection and retention of subcontractors, including procurement of materials and leases of equipment. The contractor shall take all necessary and reasonable steps to ensure nondiscrimination in the administration of this contract.

a. The contractor shall notify all potential subcontractors and suppliers and lessors of their EEO obligations under this contract.

b. The contractor will use good faith efforts to ensure subcontractor compliance with their EEO obligations.

**10. Assurance Required by 49 CFR 26.13(b):**

a. The requirements of 49 CFR Part 26 and the State DOT's U.S. DOT-approved DBE program are incorporated by reference.

b. The contractor or subcontractor shall not discriminate on the basis of race, color, national origin, or sex in the performance of this contract. The contractor shall carry out applicable requirements of 49 CFR Part 26 in the award and administration of DOT-assisted contracts. Failure by the contractor to carry out these requirements is a material breach of this contract, which may result in the termination of this contract or such other remedy as the contracting agency deems appropriate.

**11. Records and Reports:** The contractor shall keep such records as necessary to document compliance with the EEO requirements. Such records shall be retained for a period of three years following the date of the final payment to the contractor for all contract work and shall be available at reasonable times and places for inspection by authorized representatives of the contracting agency and the FHWA.

a. The records kept by the contractor shall document the following:

(1) The number and work hours of minority and non-minority group members and women employed in each work classification on the project;

(2) The progress and efforts being made in cooperation with unions, when applicable, to increase employment opportunities for minorities and women; and

(3) The progress and efforts being made in locating, hiring, training, qualifying, and upgrading minorities and women;

b. The contractors and subcontractors will submit an annual report to the contracting agency each July for the duration of the project, indicating the number of minority, women, and non-minority group employees currently engaged in each work classification required by the contract work. This information is to be reported on Form FHWA-1391. The staffing data should represent the project work force on board in all or any part of the last payroll period preceding the end of July. If on-the-job training is being required by special provision, the contractor

3

will be required to collect and report training data. The employment data should reflect the work force on board during all or any part of the last payroll period preceding the end of July.

## III. NONSEGREGATED FACILITIES

This provision is applicable to all Federal-aid construction contracts and to all related construction subcontracts of $10,000 or more.

The contractor must ensure that facilities provided for employees are provided in such a manner that segregation on the basis of race, color, religion, sex, or national origin cannot result. The contractor may neither require such segregated use by written or oral policies nor tolerate such use by employee custom. The contractor's obligation extends further to ensure that its employees are not assigned to perform their services at any location, under the contractor's control, where the facilities are segregated. The term "facilities" includes waiting rooms, work areas, restaurants and other eating areas, time clocks, restrooms, washrooms, locker rooms, and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing provided for employees. The contractor shall provide separate or single-user restrooms and necessary dressing or sleeping areas to assure privacy between sexes.

## IV. DAVIS-BACON AND RELATED ACT PROVISIONS

This section is applicable to all Federal-aid construction projects exceeding $2,000 and to all related subcontracts and lower-tier subcontracts (regardless of subcontract size). The requirements apply to all projects located within the right-of-way of a roadway that is functionally classified as Federal-aid highway. This excludes roadways functionally classified as local roads or rural minor collectors, which are exempt. Contracting agencies may elect to apply these requirements to other projects.

The following provisions are from the U.S. Department of Labor regulations in 29 CFR 5.5 "Contract provisions and related matters" with minor revisions to conform to the FHWA-1273 format and FHWA program requirements.

### 1. Minimum wages

a. All laborers and mechanics employed or working upon the site of the work, will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the contractor and such laborers and mechanics.

Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions

of paragraph 1.d. of this section; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: Provided, That the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under paragraph 1.b. of this section) and the Davis-Bacon poster (WH–1321) shall be posted at all times by the contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

b.(1) The contracting officer shall require that any class of laborers or mechanics, including helpers, which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The contracting officer shall approve an additional classification and wage rate and fringe benefits therefore only when the following criteria have been met:

(i) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(ii) The classification is utilized in the area by the construction industry; and

(iii) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(2) If the contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the contracting officer agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by the contracting officer to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210. The Administrator, or an authorized representative, will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(3) In the event the contractor, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the contracting officer shall refer the questions, including the views of all interested parties and the recommendation of the contracting officer, to the Wage and Hour Administrator for determination. The Wage and Hour Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the contracting officer or

will notify the contracting officer within the 30-day period that additional time is necessary.

(4) The wage rate (including fringe benefits where appropriate) determined pursuant to paragraphs 1.b.(2) or 1.b.(3) of this section, shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

c. Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

d. If the contractor does not make payments to a trustee or other third person, the contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, Provided, That the Secretary of Labor has found, upon the written request of the contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

## 2.  Withholding

The contracting agency shall upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from the contractor under this contract, or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the contractor or any subcontractor the full amount of wages required by the contract.  In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the wages required by the contract, the contracting agency may, after written notice to the contractor, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

## 3.  Payrolls and basic records

a.  Payrolls and basic records relating thereto shall be maintained by the contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-

Bacon Act, the contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

b.(1) The contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the contracting agency.   The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee ( e.g. , the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH–347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/esa/whd/forms/wh347instr.htm or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to the contracting agency for transmission to the State DOT, the FHWA or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this section for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to the contracting agency..

(2) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify the following:

(i) That the payroll for the payroll period contains the information required to be provided under §5.5 (a)(3)(ii) of Regulations, 29 CFR part 5, the appropriate information is being maintained under §5.5 (a)(3)(i) of Regulations, 29 CFR part 5, and that such information is correct and complete;

(ii) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in Regulations, 29 CFR part 3;

(iii) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(3) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH–347 shall satisfy the requirement for submission of the "Statement of Compliance" required by paragraph 3.b.(2) of this section.

(4) The falsification of any of the above certifications may subject the contractor or subcontractor to civil or criminal prosecution under section 1001 of title 18 and section 231 of title 31 of the United States Code.

c. The contractor or subcontractor shall make the records required under paragraph 3.a. of this section available for inspection, copying, or transcription by authorized representatives of the contracting agency, the State DOT, the FHWA, or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the contractor or subcontractor fails to submit the required records or to make them available, the FHWA may, after written notice to the contractor, the contracting agency or the State DOT, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

**4. Apprentices and trainees**

a. Apprentices (programs of the USDOL).

Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship Training, Employer and Labor Services, or with a State Apprenticeship Agency recognized by the Office, or if a person is employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship Training, Employer and Labor Services or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice.

The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the contractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the contractor's or subcontractor's registered program shall be observed.

Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination.

In the event the Office of Apprenticeship Training, Employer and Labor Services, or a State Apprenticeship Agency recognized by the Office, withdraws approval of an apprenticeship program, the contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

b. Trainees (programs of the USDOL).

Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration.

The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration.

Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed.

In the event the Employment and Training Administration withdraws approval of a training program, the contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

c. Equal employment opportunity. The utilization of apprentices, trainees and journeymen under this part shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR part 30.

d. Apprentices and Trainees (programs of the U.S. DOT).

Apprentices and trainees working under apprenticeship and skill training programs which have been certified by the Secretary of Transportation as promoting EEO in connection with Federal-aid highway construction programs are not subject to the requirements of paragraph 4 of this Section IV. The straight time hourly wage rates for apprentices and trainees under such programs will be established by the particular programs. The ratio of apprentices and trainees to journeymen shall not be greater than permitted by the terms of the particular program.

**5. Compliance with Copeland Act requirements.** The contractor shall comply with the requirements of 29 CFR part 3, which are incorporated by reference in this contract.

**6. Subcontracts.** The contractor or subcontractor shall insert Form FHWA-1273 in any subcontracts and also require the subcontractors to include Form FHWA-1273 in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the contract clauses in 29 CFR 5.5.

**7. Contract termination: debarment.** A breach of the contract clauses in 29 CFR 5.5 may be grounds for termination of the contract, and for debarment as a contractor and a subcontractor as provided in 29 CFR 5.12.

**8. Compliance with Davis-Bacon and Related Act requirements.** All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR parts 1, 3, and 5 are herein incorporated by reference in this contract.

**9. Disputes concerning labor standards.** Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

**10. Certification of eligibility.**

a. By entering into this contract, the contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

b. No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

c. The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

## V. CONTRACT WORK HOURS AND SAFETY STANDARDS ACT

The following clauses apply to any Federal-aid construction contract in an amount in excess of $100,000 and subject to the overtime provisions of the Contract Work Hours and Safety Standards Act. These clauses shall be inserted in addition to the clauses required by 29 CFR 5.5(a) or 29 CFR 4.6. As used in this paragraph, the terms laborers and mechanics include watchmen and guards.

**1. Overtime requirements.** No contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty hours in such workweek.

**2. Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the clause set forth in paragraph (1.) of this section, the contractor and any subcontractor responsible therefor shall be liable for the unpaid wages. In addition, such contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause set forth in paragraph (1.) of this section, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty hours without payment of the overtime wages required by the clause set forth in paragraph (1.) of this section.

**3. Withholding for unpaid wages and liquidated damages.** The FHWA or the contacting agency shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by the contractor or subcontractor under any such contract or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime contractor, such sums as may be determined to be necessary to satisfy any liabilities of such contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in paragraph (2.) of this section.

**4. Subcontracts.** The contractor or subcontractor shall insert in any subcontracts the clauses set forth in paragraph (1.) through (4.) of this section and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in paragraphs (1.) through (4.) of this section.

## VI. SUBLETTING OR ASSIGNING THE CONTRACT

This provision is applicable to all Federal-aid construction contracts on the National Highway System.

1. The contractor shall perform with its own organization contract work amounting to not less than 30 percent (or a greater percentage if specified elsewhere in the contract) of the total original contract price, excluding any specialty items designated by the contracting agency. Specialty items may be performed by subcontract and the amount of any such specialty items performed may be deducted from the total original contract price before computing the amount of work required to be performed by the contractor's own organization (23 CFR 635.116).

   a. The term "perform work with its own organization" refers to workers employed or leased by the prime contractor, and equipment owned or rented by the prime contractor, with or without operators. Such term does not include employees or equipment of a subcontractor or lower tier subcontractor, agents of the prime contractor, or any other assignees. The term may include payments for the costs of hiring leased employees from an employee leasing firm meeting all relevant Federal and State regulatory requirements. Leased employees may only be included in this term if the prime contractor meets all of the following conditions:

      (1) the prime contractor maintains control over the supervision of the day-to-day activities of the leased employees;
      (2) the prime contractor remains responsible for the quality of the work of the leased employees;
      (3) the prime contractor retains all power to accept or exclude individual employees from work on the project; and
      (4) the prime contractor remains ultimately responsible for the payment of predetermined minimum wages, the submission of payrolls, statements of compliance and all other Federal regulatory requirements.

   b. "Specialty Items" shall be construed to be limited to work that requires highly specialized knowledge, abilities, or equipment not ordinarily available in the type of contracting organizations qualified and expected to bid or propose on the contract as a whole and in general are to be limited to minor components of the overall contract.

   2. The contract amount upon which the requirements set forth in paragraph (1) of Section VI is computed includes the cost of material and manufactured products which are to be purchased or produced by the contractor under the contract provisions.

3. The contractor shall furnish (a) a competent superintendent or supervisor who is employed by the firm, has full authority to direct performance of the work in accordance with the contract requirements, and is in charge of all construction operations (regardless of who performs the work) and (b) such other of its own organizational resources (supervision, management, and engineering services) as the contracting officer determines is necessary to assure the performance of the contract.

4. No portion of the contract shall be sublet, assigned or otherwise disposed of except with the written consent of the contracting officer, or authorized representative, and such consent when given shall not be construed to relieve the contractor of any responsibility for the fulfillment of the contract. Written consent will be given only after the contracting agency has assured that each subcontract is

evidenced in writing and that it contains all pertinent provisions and requirements of the prime contract.

5. The 30% self-performance requirement of paragraph (1) is not applicable to design-build contracts; however, contracting agencies may establish their own self-performance requirements.

## VII. SAFETY: ACCIDENT PREVENTION

T h i s   p r o v i s i o n   i s   applicable to all Federal-aid construction contracts and to all related subcontracts.

1. In the performance of this contract the contractor shall comply with all applicable Federal, State, and local laws governing safety, health, and sanitation (23 CFR 635). The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions as it determines, or as the contracting officer may determine, to be reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

2. It is a condition of this contract, and shall be made a condition of each subcontract, which the contractor enters into pursuant to this contract, that the contractor and any subcontractor shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which are unsanitary, hazardous or dangerous to his/her health or safety, as determined under construction safety and health standards (29 CFR 1926) promulgated by the Secretary of Labor, in accordance with Section 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. 3704).

3. Pursuant to 29 CFR 1926.3, it is a condition of this contract that the Secretary of Labor or authorized representative thereof, shall have right of entry to any site of contract performance to inspect or investigate the matter of compliance with the construction safety and health standards and to carry out the duties of the Secretary under Section 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C.3704).

## VIII. FALSE STATEMENTS CONCERNING HIGHWAY PROJECTS

T h i s   p r o v i s i o n   i s   applicable to all Federal-aid construction contracts and to all related subcontracts.

   In order to assure high quality and durable construction in conformity with approved plans and specifications and a high degree of reliability on statements and representations made by engineers, contractors, suppliers, and workers on Federal-aid highway projects, it is essential that all persons concerned with the project perform their functions as carefully, thoroughly, and honestly as possible. Willful falsification, distortion, or misrepresentation with respect to any facts related to the project is a violation of Federal law. To prevent any misunderstanding regarding the seriousness of these and similar acts, Form FHWA-1022 shall be posted on each Federal-aid highway project (23 CFR 635) in one or more places where it is readily available to all persons concerned with the project:

18 U.S.C. 1020 reads as follows:

8

"Whoever, being an officer, agent, or employee of the United States, or of any State or Territory, or whoever, whether a person, association, firm, or corporation, knowingly makes any false statement, false representation, or false report as to the character, quality, quantity, or cost of the material used or to be used, or the quantity or quality of the work performed or to be performed, or the cost thereof in connection with the submission of plans, maps, specifications, contracts, or costs of construction on any highway or related project submitted for approval to the Secretary of Transportation; or

Whoever knowingly makes any false statement, false representation, false report or false claim with respect to the character, quality, quantity, or cost of any work performed or to be performed, or materials furnished or to be furnished, in connection with the construction of any highway or related project approved by the Secretary of Transportation; or

Whoever knowingly makes any false statement or false representation as to material fact in any statement, certificate, or report submitted pursuant to provisions of the Federal-aid Roads Act approved July 1, 1916, (39 Stat. 355), as amended and supplemented;

Shall be fined under this title or imprisoned not more than 5 years or both."

## IX. IMPLEMENTATION OF CLEAN AIR ACT AND FEDERAL WATER POLLUTION CONTROL ACT

This provision is applicable to all Federal-aid construction contracts and to all related subcontracts.

By submission of this bid/proposal or the execution of this contract, or subcontract, as appropriate, the bidder, proposer, Federal-aid construction contractor, or subcontractor, as appropriate, will be deemed to have stipulated as follows:

1. That any person who is or will be utilized in the performance of this contract is not prohibited from receiving an award due to a violation of Section 508 of the Clean Water Act or Section 306 of the Clean Air Act.
2. That the contractor agrees to include or cause to be included the requirements of paragraph (1) of this Section X in every subcontract, and further agrees to take such action as the contracting agency may direct as a means of enforcing such requirements.

## X. CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY AND VOLUNTARY EXCLUSION

This provision is applicable to all Federal-aid construction contracts, design-build contracts, subcontracts, lower-tier subcontracts, purchase orders, lease agreements, consultant contracts or any other covered transaction requiring FHWA approval or that is estimated to cost $25,000 or more – as defined in 2 CFR Parts 180 and 1200.

### 1. Instructions for Certification – First Tier Participants:

a. By signing and submitting this proposal, the prospective first tier participant is providing the certification set out below.

b. The inability of a person to provide the certification set out below will not necessarily result in denial of participation in this covered transaction. The prospective first tier participant shall submit an explanation of why it cannot provide the certification set out below. The certification or explanation will be considered in connection with the department or agency's determination whether to enter into this transaction. However, failure of the prospective first tier participant to furnish a certification or an explanation shall disqualify such a person from participation in this transaction.

c. The certification in this clause is a material representation of fact upon which reliance was placed when the contracting agency determined to enter into this transaction. If it is later determined that the prospective participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the contracting agency may terminate this transaction for cause of default.

d. The prospective first tier participant shall provide immediate written notice to the contracting agency to whom this proposal is submitted if any time the prospective first tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

e. The terms "covered transaction," "debarred," "suspended," "ineligible," "participant," "person," "principal," and "voluntarily excluded," as used in this clause, are defined in 2 CFR Parts 180 and 1200. "First Tier Covered Transactions" refers to any covered transaction between a grantee or subgrantee of Federal funds and a participant (such as the prime or general contract). "Lower Tier Covered Transactions" refers to any covered transaction under a First Tier Covered Transaction (such as subcontracts). "First Tier Participant" refers to the participant who has entered into a covered transaction with a grantee or subgrantee of Federal funds (such as the prime or general contractor). "Lower Tier Participant" refers any participant who has entered into a covered transaction with a First Tier Participant or other Lower Tier Participants (such as subcontractors and suppliers).

f. The prospective first tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency entering into this transaction.

g. The prospective first tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion-Lower Tier Covered Transactions," provided by the department or contracting agency, entering into this covered transaction, without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions exceeding the $25,000 threshold.

h. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant is responsible for ensuring that its principals are not suspended, debarred, or otherwise ineligible to participate in covered transactions. To verify the eligibility of its principals, as well as the eligibility of any lower tier prospective participants, each participant may, but is not required to, check the Excluded Parties List System website (https://www.epls.gov/), which is compiled by the General Services Administration.

9

i. Nothing contained in the foregoing shall be construed to require the establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of the prospective participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

j. Except for transactions authorized under paragraph (f) of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause or default.

\* \* \* \* \*

**2. Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion – First Tier Participants:**

a. The prospective first tier participant certifies to the best of its knowledge and belief, that it and its principals:

(1) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participating in covered transactions by any Federal department or agency;

(2) Have not within a three-year period preceding this proposal been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(3) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph (a)(2) of this certification; and

(4) Have not within a three-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

b. Where the prospective participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

**2. Instructions for Certification - Lower Tier Participants:**

(Applicable to all subcontracts, purchase orders and other lower tier transactions requiring prior FHWA approval or estimated to cost $25,000 or more - 2 CFR Parts 180 and 1200)

a. By signing and submitting this proposal, the prospective lower tier is providing the certification set out below.

b. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department, or agency with which

this transaction originated may pursue available remedies, including suspension and/or debarment.

c. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous by reason of changed circumstances.

d. The terms "covered transaction," "debarred," "suspended," "ineligible," "participant," "person," "principal," and "voluntarily excluded," as used in this clause, are defined in 2 CFR Parts 180 and 1200. You may contact the person to which this proposal is submitted for assistance in obtaining a copy of those regulations. "First Tier Covered Transactions" refers to any covered transaction between a grantee or subgrantee of Federal funds and a participant (such as the prime or general contract). "Lower Tier Covered Transactions" refers to any covered transaction under a First Tier Covered Transaction (such as subcontracts). "First Tier Participant" refers to the participant who has entered into a covered transaction with a grantee or subgrantee of Federal funds (such as the prime or general contractor). "Lower Tier Participant" refers any participant who has entered into a covered transaction with a First Tier Participant or other Lower Tier Participants (such as subcontractors and suppliers).

e. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

f. The prospective lower tier participant further agrees by submitting this proposal that it will include this clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion-Lower Tier Covered Transaction," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions exceeding the $25,000 threshold.

g. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant is responsible for ensuring that its principals are not suspended, debarred, or otherwise ineligible to participate in covered transactions.  To verify the eligibility of its principals, as well as the eligibility of any lower tier prospective participants, each participant may, but is not required to, check the Excluded Parties List System website (https://www.epls.gov/), which is complied by the General Services Administration.

h. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

i. Except for transactions authorized under paragraph e of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the

10

department or agency with which this transaction originated
may pursue available remedies, including suspension and/or
debarment.

\* \* \* \* \*

**Certification Regarding Debarment, Suspension,
Ineligibility and Voluntary Exclusion--Lower Tier
Participants:**

1. The prospective lower tier participant certifies, by
submission of this proposal, that neither it nor its principals is
presently debarred, suspended, proposed for debarment,
declared ineligible, or voluntarily excluded from participating in
covered transactions by any Federal department or agency.

2. Where the prospective lower tier participant is unable to
certify to any of the statements in this certification, such
prospective participant shall attach an explanation to this
proposal.

\* \* \* \* \*

**XI. CERTIFICATION REGARDING USE OF CONTRACT
FUNDS FOR LOBBYING**

This provision is applicable to all Federal-aid construction
contracts and to all related subcontracts which exceed
$100,000 (49 CFR 20).

1. The prospective participant certifies, by signing and
submitting this bid or proposal, to the best of his or her
knowledge and belief, that:

a. No Federal appropriated funds have been paid or will be
paid, by or on behalf of the undersigned, to any person for
influencing or attempting to influence an officer or employee of
any Federal agency, a Member of Congress, an officer or
employee of Congress, or an employee of a Member of
Congress in connection with the awarding of any Federal
contract, the making of any Federal grant, the making of any
Federal loan, the entering into of any cooperative agreement,
and the extension, continuation, renewal, amendment, or
modification of any Federal contract, grant, loan, or
cooperative agreement.

b. If any funds other than Federal appropriated funds have
been paid or will be paid to any person for influencing or
attempting to influence an officer or employee of any Federal
agency, a Member of Congress, an officer or employee of
Congress, or an employee of a Member of Congress in
connection with this Federal contract, grant, loan, or
cooperative agreement, the undersigned shall complete and
submit Standard Form-LLL, "Disclosure Form to Report
Lobbying," in accordance with its instructions.

2. This certification is a material representation of fact upon
which reliance was placed when this transaction was made or
entered into. Submission of this certification is a prerequisite
for making or entering into this transaction imposed by 31
U.S.C. 1352. Any person who fails to file the required
certification shall be subject to a civil penalty of not less than
$10,000 and not more than $100,000 for each such failure.

3. The prospective participant also agrees by submitting its
bid or proposal that the participant shall require that the
language of this certification be included in all lower tier
subcontracts, which exceed $100,000 and that all such
recipients shall certify and disclose accordingly.

**ATTACHMENT A - EMPLOYMENT AND MATERIALS PREFERENCE FOR APPALACHIAN DEVELOPMENT HIGHWAY SYSTEM OR APPALACHIAN LOCAL ACCESS ROAD CONTRACTS**

This provision is applicable to all Federal-aid projects funded under the Appalachian Regional Development Act of 1965.

1. During the performance of this contract, the contractor undertaking to do work which is, or reasonably may be, done as on-site work, shall give preference to qualified persons who regularly reside in the labor area as designated by the DOL wherein the contract work is situated, or the subregion, or the Appalachian counties of the State wherein the contract work is situated, except:

a. To the extent that qualified persons regularly residing in the area are not available.

b. For the reasonable needs of the contractor to employ supervisory or specially experienced personnel necessary to assure an efficient execution of the contract work.

c. For the obligation of the contractor to offer employment to present or former employees as the result of a lawful collective bargaining contract, provided that the number of nonresident persons employed under this subparagraph (1c) shall not exceed 20 percent of the total number of employees employed by the contractor on the contract work, except as provided in subparagraph (4) below.

2. The contractor shall place a job order with the State Employment Service indicating (a) the classifications of the laborers, mechanics and other employees required to perform the contract work, (b) the number of employees required in each classification, (c) the date on which the participant estimates such employees will be required, and (d) any other pertinent information required by the State Employment Service to complete the job order form. The job order may be placed with the State Employment Service in writing or by telephone. If during the course of the contract work, the information submitted by the contractor in the original job order is substantially modified, the participant shall promptly notify the State Employment Service.

3. The contractor shall give full consideration to all qualified job applicants referred to him by the State Employment Service. The contractor is not required to grant employment to any job applicants who, in his opinion, are not qualified to perform the classification of work required.

4. If, within one week following the placing of a job order by the contractor with the State Employment Service, the State Employment Service is unable to refer any qualified job applicants to the contractor, or less than the number requested, the State Employment Service will forward a certificate to the contractor indicating the unavailability of applicants. Such certificate shall be made a part of the contractor's permanent project records. Upon receipt of this certificate, the contractor may employ persons who do not normally reside in the labor area to fill positions covered by the certificate, notwithstanding the provisions of subparagraph (1c) above.

5. The provisions of 23 CFR 633.207(e) allow the contracting agency to provide a contractual preference for the use of mineral resource materials native to the Appalachian region.

6. The contractor shall include the provisions of Sections 1 through 4 of this Attachment A in every subcontract for work which is, or reasonably may be, done as on-site work.

General Decision Number: NM170051 01/06/2017  NM51

Superseded General Decision Number: NM20160051

State: New Mexico

Construction Type: Highway

Counties: Cibola, Colfax, Guadalupe, Harding, Los Alamos,
McKinley, Mora, Quay, Rio Arriba, San Miguel, Taos and Union
Counties in New Mexico.


HIGHWAY CONSTRUCTION PROJECTS (excluding tunnels, building
structures in rest area projects & railroad construction;
bascule, suspension & spandrel arch bridges designed for
commercial navigation, bridges involving marine construction;
and other major bridges).

Note: Under Executive Order (EO) 13658, an hourly minimum wage
of $10.20 for calendar year 2017 applies to all contracts
subject to the Davis-Bacon Act for which the contract is awarded
(and any solicitation was issued) on or after January 1, 2015.
If this contract is covered by the EO, the contractor must pay
all workers in any classification listed on this wage
determination at least $10.20 per hour (or the applicable
wage rate listed on this wage determination, if it is higher)
for all hours spent performing on the contract in calendar
year 2017. The EO minimum wage rate will be adjusted annually.
Additional information on contractor requirements and worker
protections under the EO is available at
www.dol.gov/whd/govcontracts.


Modification Number     Publication Date
        0               01/06/2017

  *  SUNM2011-005 08/26/2011

|  | Rates | Fringes |
|---|---|---|
| CARPENTER (Includes Form Work) | | |
| Cibola, Ria Arriba..........$ 14.27 | | 0.44 |
| Guadalupe, Los Alamos, | | |
| Colfax, Harding, Guay, | | |
| Taos, Union.................$ 13.84 | | 0.44 |
| McKinley....................$ 13.51 | | 0.44 |
| Mora........................$ 14.44 | | 0.44 |
| San Miguel..................$ 13.93 | | 0.44 |
| | | |
| CEMENT MASON/CONCRETE FINISHER | | |
| Cibola......................$ 15.58 | | 0.26 |
| Colfax, Guadalupe, | | |
| Harding, Los Alamos, | | |
| McKinley, mora, Quay, Union.$ 15.07 | | 0.26 |
| Rio Arriba, San Miguel......$ 15.58 | | 1.54 |

NM 51 - 1

```
        Taos........................$ 14.98              0.26

ELECTRICIAN (Including
Traffic Signal Installation).....$ 24.66              8.56

HIGHWAY/PARKING LOT STRIPING:
Includes Highway Line/Parking
Lot Line Striping and Line
Striping Truck Driver
        Cibola......................$ 13.66              0.35
        Colfax, Guadalupe,
        Harding, Los Alamos, Mora,
        Rio Arriba, Taos, Union.....$ 15.16              0.35
        McKinley....................$ 14.55              0.35
        Quay........................$ 16.37              0.26
        San Miguel..................$ 15.31              0.35

INSTALLER:  (Guardrails,
Handrails and Signs)
        Cibola......................$ 12.35              0.35
        Colfax......................$ 11.68              0.35
        Guadalupe, Harding, Los
        Alamos, McKinley, Mora,
        Rio Arriba, San Miguel,
        Taos, Union.................$ 12.37              0.35
        Quay........................$ 12.00              0.35

IRONWORKER, REINFORCING/REBAR
        Cibola......................$ 23.05              1.54
        Colfax, Guadalupe,
        Harding, Los Alamos, Mora,
        Quay, San Miguel, Taos,
        Union.......................$ 21.57              4.80
        McKinley....................$ 22.44              5.85
        Rio Arriba..................$ 21.98              6.03

IRONWORKER, STRUCTURAL..........$ 21.77              6.03

LABORER
        Asphalt Raker...............$ 14.39              0.35
        Common or General
         Cibola.....................$ 12.27              0.35
         Colfax.....................$  9.60              0.35
         Guadalupe, Los Alamos......$ 11.83              0.35
         Harding....................$ 11.57              0.35
         McKinley...................$ 11.22              0.35
         Mora.......................$ 11.34              0.35
         Quay.......................$ 12.15              0.35
         Rio Arriba.................$ 12.28              0.35
         San Miguel.................$ 12.56              0.35
         Taos.......................$ 12.61              0.35
         Union......................$ 10.89              0.35
        Flagger/Cone Setter
         Cibola.....................$ 13.14              0.35
         Colfx, Guadalupe,
         Harding, Los Alamos,
```

```
        Mora, Rio Arriba, San
        Miguel, Taos, Union........$ 12.15          0.99
        McKinley..................$ 11.66          0.35
        Quay......................$ 12.21          0.26
     Grade Checker...............$ 14.67          1.60
     MasonTender-
     Brick/Cement/Concrete
        Cibola, Colfax,
        Guadalupe, Harding, Los
        Alamos, McKinley, Mora,
        Quay, San Miguel, Taos,
        Union.....................$ 13.04          1.78
        Rio Arriba................$ 13.33          1.97
     Pipelayer...................$ 16.99          0.35

PAINTER (Brush, Roller and
Spray)
        Cibola, Colfax, Guadalupe,
        Harding, Los Alamos,
        McKinley, Mora, Quay, Rio
        Arriba, San Miguel, Taos,
        Union.....................$ 15.06          0.44
        McKinley..................$ 14.15          0.44

POWER EQUIPMENT OPERATOR:
        Asphalt/Concrete Paver,
        Laydown Machine, and Plant..$ 16.43         1.51
        Backhoe/Excavator/Trackhoe
          Cibola, Colfax,
          Guadalupe, Los Alamos,
          Mora, Rio Arriba, San
          Miguel, Taos, Union........$ 16.80        0.26
          Harding..................$ 20.74         0.26
          McKinley.................$ 16.70         0.26
          Quay.....................$ 16.27         0.26
        Bobcat/Skid Loader.........$ 18.06         0.26
        Broom Operator.............$ 15.72         0.26
        Bulldozer
          Cibola, Colfax,
          Guadalupe, Harding, Los
          Alamos, McKinley, Mora,
          Rio Arriba, San Miguel,
          Taos, Union..............$ 14.97         0.26
          Quay.....................$ 14.89         0.26
        Crusher....................$ 16.53         0.26
        Distributor................$ 14.50         0.26
        Forklift...................$ 17.16         0.26
        Grader/Blade
          Cibola, Colfax,
          Guadalupe, Harding, Los
          Alamos, McKinley, Mora,
          Rio Arriba, San Miguel,
          Taos, Union..............$ 17.48         0.26
          Quay.....................$ 19.50         0.26
        Loader (Front End)
          Cibola, Guadalupe, Los
```

NM 51 - 3

```
         Alamos, Rio Arriba, San
         Miguel, Taos, Union........$ 16.27          0.26
         Colfax....................$ 15.72          0.26
         Harding...................$ 19.37          0.26
         McKinley..................$ 16.13          0.26
         Mora......................$ 16.21          0.26
         Quay......................$ 16.10          0.26
    Mechanic......................$ 17.48          0.26
    Milling Machine...............$ 16.89          0.26
    Oiler.........................$ 14.29          0.26
    Piledriver
         Cibola, Colfax,
         Guadalupe, Harding, Los
         Alamos, Mora, Rio Arriba,
         San Miguel, Taos, Union....$ 15.87          0.26
         McKinley..................$ 14.95          0.26
         Quay......................$ 15.99          0.26
    Roller (Asphalt and Dirt)
         Cibola, Colfax,
         Guadalupe, Harding, Los
         Alamos, McKinley, Mora,
         Rio Arriba, San Miguel,
         Taos, Union...............$ 14.39          0.98
         McKinley..................$ 16.49          0.26
         Quay......................$ 14.74          0.26
    Rotomill......................$ 15.80          0.26
    Scraper.......................$ 15.91          0.26
    Screed........................$ 15.96          0.26
    Tractor.......................$ 16.84          0.26
    Trencher......................$ 16.26          0.26


TRUCK DRIVER
    Distributor...................$ 13.56          0.26
    Dump Truck
         Cibola, Guadalupe,
         Harding, Los Alamos,
         Mora, Rio Arriba, Taos,
         Union.....................$ 14.75          0.26
         Colfax, San Miguel........$ 13.24          0.26
         McKinley..................$ 13.15          0.26
         Quay......................$ 15.20          0.26
    Flatbed Truck
         Cibola....................$ 12.71          0.26
         Colfax, Guadalupe,
         Harding, Los Alamos,
         Mora, Taos, Union.........$ 13.27          0.26
         McKinley..................$ 13.55          0.26
         Quay, San Miguel..........$ 13.30          0.26
         Rio Arriba................$ 12.95          0.26
    Pickup and Pilot Car..........$ 12.74          0.26
    Semi-Trailer Truck............$ 16.58          0.26
    Tractor Haul Truck............$ 14.00
    Water Truck...................$ 13.13          0.26
-------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing
```

NM 51 - 4

operation to which welding is incidental.

================================================================

Note: Executive Order (EO) 13706, Establishing Paid Sick Leave
for Federal Contractors applies to all contracts subject to the
Davis-Bacon Act for which the contract is awarded (and any
solicitation was issued) on or after January 1, 2017.  If this
contract is covered by the EO, the contractor must provide
employees with 1 hour of paid sick leave for every 30 hours
they work, up to 56 hours of paid sick leave each year.
Employees must be permitted to use paid sick leave for their
own illness, injury or other health-related needs, including
preventive care; to assist a family member (or person who is
like family to the employee) who is ill, injured, or has other
health-related needs, including preventive care; or for reasons
resulting from, or to assist a family member (or person who is
like family to the employee) who is a victim of, domestic
violence, sexual assault, or stalking.  Additional information
on contractor requirements and worker protections under the EO
is available at www.dol.gov/whd/govcontracts.

Unlisted classifications needed for work not included within
the scope of the classifications listed may be added after
award only as provided in the labor standards contract clauses
(29CFR 5.5 (a) (1) (ii)).

----------------------------------------------------------------

The body of each wage determination lists the classification
and wage rates that have been found to be prevailing for the
cited type(s) of construction in the area covered by the wage
determination. The classifications are listed in alphabetical
order of "identifiers" that indicate whether the particular
rate is a union rate (current union negotiated rate for local),
a survey rate (weighted average rate) or a union average rate
(weighted union average rate).

Union Rate Identifiers

A four letter classification abbreviation identifier enclosed
in dotted lines beginning with characters other than "SU" or
"UAVG" denotes that the union classification and rate were
prevailing for that classification in the survey. Example:
PLUM0198-005 07/01/2014. PLUM is an abbreviation identifier of
the union which prevailed in the survey for this
classification, which in this example would be Plumbers. 0198
indicates the local union number or district council number
where applicable, i.e., Plumbers Local 0198. The next number,
005 in the example, is an internal number used in processing
the wage determination. 07/01/2014 is the effective date of the
most current negotiated rate, which in this example is July 1,
2014.

Union prevailing wage rates are updated to reflect all rate changes in the collective bargaining agreement (CBA) governing this classification and rate.

Survey Rate Identifiers

Classifications listed under the "SU" identifier indicate that no one rate prevailed for this classification in the survey and the published rate is derived by computing a weighted average rate based on all the rates reported in the survey for that classification.  As this weighted average rate includes all rates reported in the survey, it may include both union and non-union rates. Example: SULA2012-007 5/13/2014. SU indicates the rates are survey rates based on a weighted average calculation of rates and are not majority rates. LA indicates the State of Louisiana. 2012 is the year of survey on which these classifications and rates are based. The next number, 007 in the example, is an internal number used in producing the wage determination. 5/13/2014 indicates the survey completion date for the classifications and rates under that identifier.

Survey wage rates are not updated and remain in effect until a new survey is conducted.

Union Average Rate Identifiers

Classification(s) listed under the UAVG identifier indicate that no single majority rate prevailed for those classifications; however, 100% of the data reported for the classifications was union data. EXAMPLE: UAVG-OH-0010 08/29/2014. UAVG indicates that the rate is a weighted union average rate. OH indicates the state. The next number, 0010 in the example, is an internal number used in producing the wage determination. 08/29/2014 indicates the survey completion date for the classifications and rates under that identifier.

A UAVG rate will be updated once a year, usually in January of each year, to reflect a weighted average of the current negotiated/CBA rate of the union locals from which the rate is based.

----------------------------------------------------------------

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

*  an existing published wage determination
*  a survey underlying a wage determination
*  a Wage and Hour Division letter setting forth a position on a wage determination matter
*  a conformance (additional classification and rate) ruling

NM 51 - 6

On survey related matters, initial contact, including requests
for summaries of surveys, should be with the Wage and Hour
Regional Office for the area in which the survey was conducted
because those Regional Offices have responsibility for the
Davis-Bacon survey program. If the response from this initial
contact is not satisfactory, then the process described in 2.)
and 3.) should be followed.

With regard to any other matter not yet ripe for the formal
process described here, initial contact should be with the
Branch of Construction Wage Determinations.  Write to:

> Branch of Construction Wage Determinations
> Wage and Hour Division
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an
interested party (those affected by the action) can request
review and reconsideration from the Wage and Hour Administrator
(See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

> Wage and Hour Administrator
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

The request should be accompanied by a full statement of the
interested party's position and by any information (wage
payment data, project description, area practice material,
etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an
interested party may appeal directly to the Administrative
Review Board (formerly the Wage Appeals Board).  Write to:

> Administrative Review Board
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

==================================================================

> END OF GENERAL DECISION

# TYPE "A" - STREET, HIGHWAY, UTILITY & LIGHT ENGINEERING
## Effective January 1, 2017

| Trade Classification | Base Rate | Fringe Rate On and Prior to February 10, 2017 | Fringe Rate After February 10, 2017 |
|---|---|---|---|
| Bricklayer/Blocklayer/Stonemason | 23.46 | 8.40 | 8.40 |
| Carpenter/Lather | 23.75 | 9.27 | 9.27 |
| Cement Mason | 17.42 | 6.35 | 6.35 |
| Ironworker | 26.50 | 14.32 | 14.32 |
| Painter (Brush/Roller/Spray) | 16.60 | 5.78 | 5.78 |
| Plumber/Pipefitter | 22.84 | 7.48 | 7.48 |
| **Electricians (outside)** | | | |
| Groundman | 21.81 | 10.92 | 10.92 |
| Equipment Operator | 31.31 | 13.39 | 13.39 |
| Lineman/Wireman or Tech | 36.83 | 14.82 | 14.82 |
| Cable Splicer | 40.51 | 15.38 | 15.38 |
| **Laborers** | | | |
| Group I | 12.20 | 5.30 | 5.30 |
| Group II | 12.50 | 5.30 | 5.30 |
| Group III | 12.90 | 5.30 | 5.30 |
| **Operators** | | | |
| Group I | 16.69 | 6.03 | 6.33 |
| Group II | 17.44 | 6.03 | 6.33 |
| Group III | 17.55 | 6.03 | 6.33 |
| Group IV | 17.63 | 6.03 | 6.33 |
| Group V | 17.75 | 6.03 | 6.33 |
| Group VI | 17.89 | 6.03 | 6.33 |
| Group VII | 18.27 | 6.03 | 6.33 |
| Group VIII | 18.50 | 6.03 | 6.33 |
| Group IX | 25.45 | 6.03 | 6.33 |
| Group X | 28.35 | 6.03 | 6.33 |
| **Truck Drivers** | | | |
| Group I | 16.00 | 7.02 | 7.02 |
| Group II | 16.00 | 7.02 | 7.02 |
| Group III | 16.00 | 7.02 | 7.02 |
| Group IV | 16.00 | 7.02 | 7.02 |

NOTE: SUBSISTENCE, ZONE AND INCENTIVE PAY APPLY ACCORDING TO THE PARTICULAR TRADES COLLECTIVE BARGAINING AGREEMENT. DETAILS ARE LOCATED AT WWW.DWS.STATE.NM.US.

49 CFR Part 20 - Appendix A

## CERTIFICATION REGARDING LOBBYING

### Certification For Contracts, Grants, Loans, And Cooperative Agreements

The undersigned certifies, to the best of his or her knowledge and belief, that:

(1)     No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)     If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, ``Disclosure Form to Report Lobbying,'' in accordance with its instructions.

(3)     The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

_____
Signature/Authorized Certifying Official

_____
JEFFERY RILEY   PRESIDENT-CEO
Typed Name and Title

_____
MALCOLM INTERNATIONAL LLC
Applicant/Organization

_____
1-8-18
Date Signed

3-48

New Mexico Department of Transportation

Form No. A-571
Rev. 4/93

**CERTIFICATION WITH REGARD TO THE PERFORMANCE OF**
**PREVIOUS CONTRACTS OF SUBCONTRACTS**

Contractors or Subcontractors subject to the Equal Opportunity Clause and the filing of Required Reports

The bidder _____ , proposed subcontractor ____x____ , hereby certifies that he has ___ , has not _____ , participated in a previous contract or subcontract subject to the equal opportunity clause, as required by Executive Orders 10925, 11114, or 11246, and that he has _____ , has not _____ , filed with the Joint Reporting committee, the Director of the Office of Federal Contract Compliance Programs (OFCCP), a Federal Government contracting or administering agency, or the former President's Committee on Equal Employment Opportunity, all reports due under the applicable filing requirements

Malcolm International LLC

By: _____

Owner: _____
TITLE          PRESIDENT - CEO

Date: _____1-8-18_____

Note: The above certification is required by the Equal Employment Opportunity Regulations of the Secretary of Labor (41 CFR 60-1.7(b) (1)), and must be submitted by bidders and proposed subcontractors only in connection with contracts and subcontracts which are subject to the equal opportunity clause. Contracts and subcontracts which are exempt from the equal opportunity clause are set forth in 41 CFR 60-1 5. **(Generally only contracts or subcontracts of $10,000 or under are exempt.)**

Currently, Standard Form 100 (EEO-1) is the only report required by the Executive Orders or their implementing regulations

Proposed prime contractors and subcontractors who have participated in a previous contract or subcontract subject to the Executive Order and have not filed the required reports should note that 41 CFR 60-1.7(b) (1) prevents the award of contracts and subcontracts unless such contractor submits a report covering the delinquent period or such other period specified by the Federal Highway Administration or by the Director, Office of Federal Contract Compliance Programs (OFCCP), U.S. Department of Labor.

Form No. A-971
Rev. 05/05

New Mexico Department of Transportation

ASSIGNMENT OF ANTITRUST CLAIMS

      Malcolm International LLC       agrees that any and all claims which it may have for overcharges resulting from antitrust violations as to goods, services and materials purchased in connection with the New Mexico Project No.    4100401R        are hereby assigned to the State of New Mexico, but only to the extent that such overcharges are passed on to the State.  It is agreed that the undersigned retains all right to any such antitrust claims to the extent of any overcharges not passed on the State, including the right to any treble damages attributable thereto.

*JEFFERY RILEY*
_____
Name of Individual Empowered to Obligate Firm

*PRESIDENT - CEO*
_____
Title

_____
Signature

*1-8-18*
_____
Date

**This form shall be executed by subcontractors and second tier subcontractors of Contractors on State Department of Transportation contracts.**

**cobb strecker dunphy & zimmermann**

*Contributing to Our Partners Success*

**September 11, 2017**

**New Mexico Department of Transportation**
**PO Box 10**
**Las Vegas, NM 87701**
**Attn: District 4**

RE:    *Fisher Sand & Gravel – New Mexico, Inc.*
       **Bond No. 190038669**
       **Contract No. EX04100401R**
       **Quay County**

**Dear District 4,**

**Fisher Sand & Gravel – New Mexico, Inc. has requested permission to use the following subcontractors on the project referenced above:**

Malcolm International LLC

**The amount of the subcontract will be:** $9,085,427.00

**Liberty Mutual Insurance Company, who executed the contract bond for this project, consents to the use of the above named subcontractors on the referenced project.**

**Sincerely,**

**Liberty Mutual Insurance Company**

**John E. Tauer, Attorney-in-Fact**

**JET:ns**

225 South Sixth Street | Suite 1900 | Minneapolis, MN 55402 | Tel: 612.349.2400 | Fax: 612.349.2490 | www.csdz.com

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated. Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees. To confirm the validity of this Power of Attorney call 610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, R. W. Frank, John E. Tauer, Joshua R. Loftis, Rachel Thomas, Craig Remick, Brian J. Oestreich, Nicole Stillings, Jerome T. Ouimet, Sandra M. Doze, Kurt C. Lundblad, Melinda C. Blodgett, Lin Ulven, R. C. Bowman, Ted Jorgensen, Emily Keiser, R. Scott Egginton, Colby D. White *************************************************************************************************************

of the city of Minneapolis, state of Minnesota its true and lawful attorney-in-fact, with full power and authority hereby conferred to sign, execute and acknowledge the following surety bond:

      Principal Name: **Fisher Sand & Gravel - New Mexico, Inc.**

      Obligee Name: **New Mexico Department of Transportation**

      Surety Bond Number: **190038669**      Bond Amount: **$20,656,000.00**

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 12th day of June, 2017.

  

The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA     ss
COUNTY OF MONTGOMERY

On this 12th day of June, 2017, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS –** Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts – SECTION 5.** Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation –** The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization –** By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 11th day of September, 2017

  

By: _____
Renee C. Llewellyn, Assistant Secretary

# STATE OF NEW MEXICO
## CONSTRUCTION INDUSTRIES DIVISION

**MALCOLM INTERNATIONAL LLC**

LICENSE NUMBER

**392317**

**Qualifying Party(S)**
**CASTRO VINCENT**

CLASSIFICATION(S)
GF02

EXPIRES
**07/31/2020**

DIRECTOR

This card is the property of the CID and shall be surrendered upon demand

Username

[                    ]

**Forgot Username?**

# Search Results

## Current Search Terms: malcolm* international*

**Your search for "malcolm* international*" returned the following results...**

**Notice:** This printed document represents only the first page of your SAM search results. More results may be available. To print your complete search results, you can download the PDF and print it.

| Entity | **Malcolm International LLC** | Status: **Active** ⊕ |
| --- | --- | --- |

**DUNS:** 080489843

**Has Active Exclusion?:** No

**Expiration Date:** 11/09/2018

**Purpose of Registration:** All Awards

**CAGE Code:** 7SNK3

**DoDAAC:**

**Debt Subject to Offset?** No

[ View Details ]



Search Records        FAPIIS.gov
Data Access    Disclaimers    GSA.gov/IAE
Check Status   Accessibility  GSA.gov
About          Privacy Policy USA.gov
Help

IBM v1.P.8.20180125-1243

WWW2

This is a U.S. General Services Administration Federal Government computer system that is "FOR OFFICIAL USE ONLY." This system performing unauthorized activities are subject to disciplinary action including criminal prosecution.

**SAM Search Results**
**List of records matching your search for :**

**Record Status: Active**
**DUNS Number: 080489843**
**Functional Area: Entity Management, Performance Information**

| ENTITY | Malcolm International LLC | Status:Active |
|---|---|---|

DUNS: 080489843      +4:                          CAGE Code: 7SNK3      DoDAAC:

Expiration Date: Nov 9, 2018      Has Active Exclusion?: No      Debt Subject to Offset?: No

Address: 3286 Fitzgerald Rd
City: Rancho Cordova                          State/Province: CALIFORNIA
ZIP Code: 95742-6811                          Country: UNITED STATES

**STATEMENT OF INTENT TO PAY PREVAILING WAGES**
**To Be Completed Before Construction Starts**
**All FIELDS ARE REQUIRED**
**FORM MUST BE SENT TO THE CONTRACTING AGENCY WITHIN 3 DAY OF THE AWARD**

| General Contractor Information | |
|---|---|
| Company Name:  Fisher Sand & Gravel – New Mexico, Inc. | |
| Address:   PO BOX 2340  30A Frontage Road East | |
| City :    Placitas               State:   NM              Zip:    87043 | |
| Phone: 505-867-2600          Fax:   505-867-1609       E-Mail:    emyoung@fisherind.com | |
| Estimated Start Date: November 2017 | State Wage Decision Number: QU-17-1133-A |
| Project Title:  4100401R | Project Physical Address:  US 54, MP 324.90 – MP 326.30 in Quay County |
| Total Contract Amount:  $20,656,000.00 | Estimated Completion Date:  November 2019 |
| Print Name:  Emily Young | General Contractor Signature: _Emily Young_ |

| Sub Contractor Information | Sub Contract Amount: $9,085,427.00 | Start date on this project: _December 2017_ |
|---|---|---|
| Company Name: Malcolm International LLC | | |
| Address:    3286 Fitzgerald Rd | | |
| City: Rancho Cordova          State: CA              Zip: 95742 | | |
| Phone: 916-287-9099       Fax:               E-Mail: vcastro@malcolmintl.com | | |
| Print Name:  JEFF RILEY | Sub Contractor Signature: | |

| 2nd, 3rd, etc. Tier Sub-Contractor Information  Contract Amount: | Start date on this project: |
|---|---|
| Company Name: | |
| Address: | |
| City:              State:              Zip: | |
| Phone:              Fax:              E-Mail: | |
| Print Name: | Tier Signature: |

I hereby certify that the above information is correct and that all workers I employ on this public works project will be paid no less than the Prevailing Wage Rate(s) as determined by the Department of Workforce Solutions, Labor Relations Division for this project as identified by the State Wage Decision Number. I understand that contractors who violate Prevailing Wage Laws (i.e., incorrect job classification, improper payment of prevailing wages, and/or overtime, etc.), are subject to debarment procedures and shall be required to pay any back wages due to workers. (Ref. Labor Relations Division,  Public Works Minimum Wage Act Policy Manual (11.1.2 NMAC) & Public Works Minimum Wage Act (13-4-11 through 13-4-18, NMSA 78).

_____                    9-14-17
Contractor's Signature                                          Date

(Revised 08/23/2013)



Form No. A-1108
Rev 11/16 CCRB

New Mexico Department of Transportation
## SUBCONTRACT CHECKLIST

Below are guidelines for checking Subcontract Packages. Please ensure the following checks are performed prior to submitting to the District Audit Section.

Control No.: **4100401R**                                       No.: **7**

Subcontractor: **Malcolm International**                        Tier: **1**

1. ✓ ✓    Ensure Application for Permission to Subcontract Request, Form A-1086 is attached.

2. ✓ ✓    Verify Project & Control Numbers are correctly stated on the Permission to Subcontract Request Form.

3. ✓ ✓    Ensure the Subcontractor, Contractor and the Project Manager have signed and dated the Permission to Subcontract Request. After all verifications, the Assistant District Engineer will sign. Ensure the Subcontractor (at all tiers) and Contractor signature date is after or equal to the date on the Pre-Qualified List.

4. ✓ ✓    Ensure Subcontractor has indicated whether Pre-qualified with NMDOT, verify the information is correct on NMDOT website on PS&E page. http://dot.state.nm.us/content/dam/nmdot/Contractor_Prequal/Prequal_List.pdf

5. ✓ ✓    Ensure Subcontractor has indicated whether they are a DBE Firm with NMDOT, verify the information is correct, see web page: https://nmdot.dbesystem.com/FrontEnd/VendorSearchPublic.asp?TN=nmdot&XID=4599

6. ✓ ✓    Ensure DWS Registration No. is correct: http://www.dws.state.nm.us/pwaa/LRDEmployer/Core/Login.ASPX Click on "Registered Contractors" and search by Number or by Name. (Subcontract over $60,000) *Note: No user id is required  DWS may state "none" for professional services.

7. ✓ ✓    Ensure DUNS No. is correct: www.sam.gov
Click on "Search Records" and search by Number or by Name, ensure page is attached if over $25,000. If "Has Active Exclusion?" states "YES", you need to contact the PM and Office of General Counsel to verify and proceed with the Subcontractor.

8. ✓ ✓    Ensure the General Wage Decision Number and the New Mexico Minimum Wage Rates Decision Number are listed on the Permission to Subcontract Request Form.

9. N/A ✓    If the Subcontractor is a Professional Service, the Statement of Intent to pay prevailing wages is not required, verify they stated that they are exempt from LCPtracker with an explanation.

10. N/A ✓    Disclosure of Lobbying Activities form LLL, is attached if it meets the conditions as stated on the A-1086. If the Subcontractor does not meet the conditions as stated, they are not required to submit the Disclosure. An updated disclosure is required when an event occurs that affects the accuracy of a previously submitted Disclosure.

11. N/A ✓    PE 10-249 or PE250 attached and completed – see A-1086 for explanation of when it is needed

12. ✓ ✓    Ensure letter of Consent from Contractor's Surety are attached.

13. ✓ ✓    Ensure a copy of the subcontract is attached signed and complete with all attachments listed in the subcontract, including an attached copy of FHWA-1273.

14. ✓ ✓    Ensure the Subcontractor has provided proof of a current license either by a copy of the contractor wallet card, a copy of the contractor professional service or specialty items business license or a print from the CID webpage showing the license information.

15. ✓ ✓    Ensure completed copy of Statement of Intent to Pay Prevailing Wages is attached (from the subcontractor or from the second tier subcontractor and that it is signed by the subcontractor/second tier subcontractor, not the Prime Contractor). If it is not attached, verify it is with the original contract the Prime submitted.

16. N/A    If applicable, ensure Form No. A-585 and A-644 are with the original contract the Prime submitted.

17. ✓ ✓    Ensure subcontracted items are checked for correct Line Number (from Contract Book), Item Number, Item Description, and Subcontracted Amount (amount the Prime is paying the Sub, no mark-ups). Verify the total amount for each item matches the Subcontract.

18. ✓ ✓    Ensure all calculations of subcontracted amounts and percentages are only for first (1st) tier contracts. All other tiers will still need to have item descriptions and quantities listed but not included in the percentage worked. This will ensure work is not duplicated by other tiers.

19. ✓ ✓    Verify previous amount subcontracted, total amount to date and total (%) percentage subcontracted to date are correctly stated.

_1/12/17_
Date Reviewed

_Jordan W William_
Print Name

_(signature)_
Signature

| Sent Date | Name | Action | Date | Recommendation | Remarks |
|---|---|---|---|---|---|
| 10/07/20 | Gonzales, Dave M | Approval | 10/07/20 | Approve | |
| 10/07/20 | Gonzales, Dave M | Approval | 10/07/20 | Approve | |
| 10/07/20 | Herrera John A. | Approval | 10/07/20 | Approve | |
| 10/07/20 | Urioste, Chris | Approval | 10/07/20 | Approve | |
| 10/07/20 | Gallegos, James | Approval | 10/07/20 | Approve | |
| 10/07/20 | Johnston, Jeff | Approval | 10/08/20 | Approve | |
| 10/07/20 | Clark, Tisha | Approval | 10/08/20 | Approve | |

CN #4100401R
CO # 4

EXHIBIT "2"

| | | |
|---|---|---|
| **Contract ID:** 4100401R | **CO Number:** 006 | **Tentative Verbal Approval Dates:** |
| | | **Federal:** 00/00/00    **Local:** 00/00/00 |

**CO Created by:** Quintana, Joseph J.                    **On:** 07/31/18

**Status:** Approved    **Approval Level:** OVERRIDE

**Description:** To incorporate a pier redesign and add time to the contract.

**Reason Code:** 02 - Modif. by Construction Personnel

**CO Type:** Supplemental Agreement

☑ Override Approval Rules                        ☐ Emergency Work

**Functions:**
☐ Overrun/Underrun    ☐ Force Account    **Bid Contract Amt:** $20,656,000.00
☐ Extra Work          ☐ Zero Dollar      **Current Contract Amt:** $22,575,284.01
☑ Time Adjustment     ☐ Final Quantity   **CO Amount:** $0.00

**Reference to:**
**Dispute:** [ ]    **Force Account:** [ ]

Rpt-ID: RCOCORPT

User: jgard1

NEW MEXICO

DEPARTMENT OF TRANSPORTATION

Change Order Report

Date: 10/06/2020

Page: 1 of 3

Contract ID: 4100401R

Change Order Nbr: 006    Force Acct ID: 0

Change Order Type: Supplemental Agreement

CO Description: To incorporate a pier redesign and add time to the contract.

Zero Dollar Change Order: No

**Change Order Report: Contract Completion Date Time Adjustment**

Original Compl Date: 0000/00/00    Adj Compl Date: 0000/00/00    Adj No. of Days: 45

Explanation:    Fisher Sand and Gravel has propose that the footings at Pier #1 and Pier #2 be raised an estimated 5 feet to lead to a safer, more efficient and more environmental friendly project in which NMDOT District Four concurs with the Contractor's assessment. 45 additional days are being granted to allow adequate time for submittals and approvals for the changes.

Rpt-ID: RCOCORPT

User: jgar01

NEW MEXICO

DEPARTMENT OF TRANSPORTATION

Date:    10/06/2020

Page: 2 of 3

## General or Standard Change Order Explanation

The purpose of this change order is to add 45 working days to the contract. Redesign of Pier #1 and Pier #2 footings, Drilled Shafts and Pier Columns, including the new drawings and calculations.

Fisher Sand and Gravel excavated at the pier locations to verify ground water elevations. It was determined that the ground water was approximately three (3) feet above the bottom of footing top of drilled shafts. With the environmental restrictions noted in the plans dewatering would NOT be an option, because of the discharge of brine (salty) waters. The water was tested by the Canadian Water Authority and found to have higher than expected salinity levels allowable to discharge into the river.

The work associated with this change impacts the critical path as this is the first items of the work that must be done to proceed with the bridge. Fisher Sand and Gravel has advised that the redesign will take seven (7) weeks to complete with some additional time for review and approval. The Contractor also advised that the redesign will cost approximately $25,000.00 and they are willing to absorb those costs for an environmentally safer project, an enhanced constructability of the footings, and a safer work area for the employees and equipment used to perform the work.

Safety:

The area where the footings are to be constructed is made up of a very loose sandy material, which is not favorable for excavations. The bottom of the pier footings are approximately 11 feet below the existing grade. The Contractor has excavated a hole to the bottom of the pier footing and encountered ground water at approximately 3 feet above the bottom of the footing. The ground water makes it extremely difficult and almost impossible to operate and stabilize heavy equipment on these conditions.

Environmental:

The Contact indicates that dewatering operations with discharge into the river is prohibited (see environmental note #2 plan page 1-6). With the proximity of the river, a dewatering system would not be feasible because a containment system of the capacity needed to hold the amount of water needed is not practical. Raising the elevation would eliminate the need to dewater and reduce the environmental risk of fresh water contamination in downstream wells and the Canadian River.

Contractor has also indicated that these deep excavations and the amount of ground water present at both locations, it would be unavoidable to discharge water into the river which is not allowed environmentally. By raising the elevation of the footings, the need for de-watering would be alleviated and improve the overall constructability of both piers. Furthermore, the ground water that was encountered at the pier #1 location during Contractor initial excavation has been sampled and tested for salinity with results indicating higher than normal levels. Raising the elevation of the footings would allow for excavation of the area with a lesser risk of encountering excess brine water that could potentially contaminate the Canadian River.

The District agrees that the additional time request is acceptable and would be beneficial to the overall progress and construction of the project. The Contractor will continue to work on the earthwork and drilled shafts for the abutments during the time of the redesign, upon completion of the abutments, the entire critical path for the project relies on the construction of the piers. Additionally, the Cast-in-place Segmental Construction requires the Contractor to build the piers and work their way from the piers out to the abutments; raising the footings 5 feet above the static ground water level will also help when the concrete is placed, to reduce the nuisance water that may enter the forms.

Time Extension: 45 Days

Comments / Notes:

Attachments:

Rpt-ID: RCOCORPT

User: jgar01

NEW MEXICO

DEPARTMENT OF TRANSPORTATION

Date: 10/06/2020

Page: 3 of 3

410040\RCO06a: Fisher Sand and Gravel Pier Redesign Time Request
410040\RCO06b: Fisher Sand and Gravel CPM before delay for the redesign
410040\RCO06c: Fisher Sand and Gravel CPM showing delay for the redesign
410040\RCO06d: Approval for time extension from NMDOT management
410040\RCO06e: Concurrence for Pier Redesign from NMDOT Bridge Bureau and Jacobs (Phase III Service)
410040\RCO06f
410040\RCO06g: McNary Bergeron & Associates (Fishers Engineering Firm) Review of Raising of Pier Footings
410040\RCO06h: Approval for the Raising of Pier Footing redesign
410040\RCO06i: NMDOT and Jacobs (Phase III Service) approval on Submittal for the Pier Column Adjustment
410040\RCO06j: Approval for Drilled Shaft Modification submittal
410040\RCO06k: Copy of Plan Sheet 1-6 (Environmental Requirements)
410040\RCO06l: Prior Approval

**General or Standard Change Order Explanation**

All other provisions of the original contract and of the contract bond, including those related to the time, manner and scope of work and payment shall continue unaltered. This document constitutes a binding contractual amendment to the above parent contract, although it is mutually understood that the quantities and total costs herein are estimates only. By approving this change order the Contractor acknowledges and certifies that the compensation provided herein properly and adequately compensates the Contractor for the additional work described in this change order, and the Contractor hereby waives any claim under the Contract for additional compensation for such work.

Contractor: Frank Lozano  *Digitally signed by Frank Lozano Date: 2020.10.07 08:55:24 -06'00'*

By: _____ Date: _____

Recommend: Lawrence Lujan  *Digitally signed by Lawrence Lujan Date: 2020.10.07 10:43:21 -06'00'* Date: _____
Project Manager For David M. Gonzales

Recommend: _____ Date: 10-7-20
Assistant District Engineer

Approved: _____ Date: _____
NMDOT Secretary or Designee

Federal participation in the cost of this work is contingent upon Federal Funds made available by a modified project agreement if necessary.

Authorized: _____ Date: _____
FHWA Area Engineer

Rpt-ID:  RCOCORPT

User:   jgar01

NEW MEXICO

DEPARTMENT OF TRANSPORTATION

Change Order Report

Date:   07/23/2019

Page: 1 of 3

Contract ID:  4100401R

Change Order Nbr:   006     Force Acct ID:   0

Change Order Type:   Supplemental Agreement

CO Description:   To incorporate a pier redesign and add time to the contract.

Zero Dollar Change Order:   No

Change Order Report: Contract Completion Date Time Adjustment

Original Compl Date: 0000/00/00          Adj Compl Date: 0000/00/00          Adj No. of Days:  45

Explanation:   Fisher Sand and Gravel has propose that the footings at Pier #1 and Pier #2 be raised an estimated 5 feet to lead to a safer, more efficient and more environmental friendly project in which NMDOT District Four concurs with the Contractor's assessment. 45 additional days are being granted to allow adequate time for submittals and approvals for the changes.

Rpt-ID: RCOCORPT                                                                          Date:    07/23/2019

User:    jgard1                                                                           Page: 2 of 3

NEW MEXICO

DEPARTMENT OF TRANSPORTATION

**General or Standard Change Order Explanation**

Fisher Sand and Gravel has propose that the footings at Pier #1 and Pier #2 be raised an estimated 5 feet to lead to a safer, more efficient and more environmental friendly project in which NMDOT District Four concurs with the Contractor's assessment. Not only will this change promote a safer and more environmentally friendly project, it will allow a stronger base for the actual pier footings which will provide the NMDOT with a better product.

Fisher Sand and Gravel has advised that the redesign would cost approximately $25,000.00 (which would be at the expense of the Contractor). The Contractor also advised the time required to redesign the pier footings would delay the critical path of the project by approximately seven weeks. Fisher Sand and Gravel is willing to absorb the costs of the redesign and any other additional costs that is affected by the redesign if NMDOT grants the additional 35 working days required to complete the redesign and an additional 10 working days for review and coordination time for a total of 45 additional working days. The additional 45 days would allow the Contractors Engineering firm to provide drawings showing the new design, calculations for the new pier column designs proving that the new design is acceptable for the structure above and to allow adequate time for the NMDOT and Phase III services to review the new design.

Safety:
The area where the footings are to be constructed is made up of a very sandy material, which is not favorable for deep excavations such as this one. The bottom of the pier footings are approximately 11 feet below the existing grade. The Contractor has excavated a hole to the bottom of the pier footing and encountered ground water at approximately 1 foot above the bottom of the footing. This ground water also creates a safety issue with such a deep excavation and the unfavorable soil conditions. Raising the elevation of the footings would alleviate the need for such a deep excavation.

Environmental:
The Contractor has also indicated that with such deep excavations and the amount of ground water present at both locations, the Contractor would need to discharge water into the river which is not allowed environmentally. By raising the elevations of these footings the need for de-watering would be alleviated and improve the overall constructability of both piers. Furthermore, the ground water that was encountered at the pier #1 location during Contractor initial excavation has been sampled and tested for salinity with results indicating higher than normal levels. Raising the elevation of the footings would allow the contractor to excavate the area with a lesser chance of encountering excess brine water that could potentially contaminate the Canadian River.

With the costs associated in the proposed redesign and any other incurred costs to the affected contract items being absorbed by Fisher Sand and Gravel; The NMDOT feels that the additional time request is acceptable and would be beneficial to the construction of the project. Although this contract is very large but almost all of the monies are allocated to the actual bridge and the earthwork. The Contractor will continue to work on the earthwork and drilled shafts for the abutments during the time of the redesign, upon completion of the abutments, the entire critical path for the project relies on the construction of the piers. This method of construction (Cast in place superstructure construction) requires the Contractor to build the piers and work their way from the piers out to the abutments. Raising the footings 5 feet above the ground water will also ensure that when the concrete is placed, there is no unwanted water trying to enter the forms which will ensure a better product.

Time: 45 Working Days

Total Contract Percentage Change Overall: 0.000%

Total Contract Percentage Change this Change Order: 0.000%

Attachment(s):
4100401RCO08a – Fisher Sand and Gravel Pier Redesign Time Request
4100401RCO08b – Fisher Sand and Gravel CPM before delay for the redesign
4100401RCO08c – Fisher Sand and Gravel CPM showing delay for the redesign
4100401RCO08d – Approval for time extension from NMDOT management
4100401RCO08e – Concurrence for Pier Redesign from NMDOT Bridge Bureau and Jacobs (Phase III Service)
4100401RCO08f – Response to Fisher Sand and Gravel's RFI #10
4100401RCO08g – McNary Bergeron & Associates (Fishers Engineering Firm) Review of Raising of Pier Footings
4100401RCO08h – Approval for the Raising of Pier Footing redesign
4100401RCO08i – NMDOT and Jacobs (Phase III Service) approval on Submittal for the Pier Column Adjustment
4100401RCO08j – Approval for Drilled Shaft Modification submittal
4100401RCO08k – Copy of Plan Sheet 1-6 (Environmental Requirements)
4100401RCO08i – Prior Approval

NEW MEXICO

DEPARTMENT OF TRANSPORTATION

General or Standard Change Order Explanation

All other provisions of the original contract and of the contract bond, including those related to the time, manner and scope of work and payment shall continue unaltered. This document constitutes a binding contractual amendment to the above parent contract, although it is mutually understood that the quantities and total costs herein are estimates only.  By approving this change order the Contractor acknowledges and certifies that the compensation provided herein properly and adequately compensates the Contractor for the additional work described in this change order, and the Contractor hereby waives any claim under the Contract for additional compensation for such work.

Contractor: _Fisher Sand and Gravel_

By: _____     Date: _9/8/26_

Recommended: _Lawrence Lujan_     Date: Digitally signed by Lawrence Lujan
Project Manager                         Date: 2020.09.08 12:25:15 -06'00'

Recommended: _____     Date: _9/16/20_
Assistant District Engineer

Approved: _____     Date: _9-17-22_
NMDOT Secretary or Designee     | For David m. Gonzales |

Federal participation in the cost of this work is contingent upon Federal Funds made available by a modified project agreement if necessary.

Authorized: _____     Date: _____
FHWA Area Engineer