## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MALCOLM INTERNATIONAL LLC, a**
**Delaware limited liability company**,

      Plaintiff,

v.                                                          No. 1:23-CV-00188-WJ-JMR

**FISHER SAND & GRAVEL-NEW**
**MEXICO, INC., a New Mexico**
**corporation**,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THIS MATTER is before the Court on *Defendant Fisher Sand & Gravel New Mexico, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment*, filed on April 17, 2023. **Doc. 5**. Jurisdiction arises under 28 U.S.C. § 1332. Having considered the parties' motions and the relevant case law, the Court **GRANTS in part and DENIES in part** Defendant's motion as outlined below.

## BACKGROUND[1]

This case arises out of a delay caused by a design change in the construction of a bridge on U.S. Highway 54 in Quay County, New Mexico. **Doc. 1 ("Complaint")**. On August 18, 2017, the New Mexico Department of Transportation ("NMDOT") selected Fisher Sand & Gravel ("Defendant") as the prime contractor to build the bridge on U.S. Highway 54 in Quay County,

---

[1]The facts in this section are taken from Plaintiff Malcom International LLC's Complaint and its accompanying exhibits. The Court accepts the allegations in Plaintiff's Complaint as true and recites them in a light most favorable to Plaintiff.

New Mexico (the "Project"). *Id.* ¶ **9**. After securing the contract with NMDOT, Defendant executed a contract with Malcom International ("Plaintiff"). The parties' contract (the "Subcontract") required Plaintiff to build bridge components for the Project. *Id.* ¶ **11**.

On March 22, 2018, as the Project was underway, Defendant asked NMDOT to delay the Project for 45 days to allow Defendant to implement a design change. *Id.* ¶ **12**. This change involved decreasing the depth of excavation, raising the grade of two piers (to be built by Plaintiff), and lengthening the depth of piers (to be built by Defendant). *Id.* Defendant agreed to absorb the costs of the redesign and any other additional costs affected by the redesign. *Id.* ¶ **13; Doc. 1 at 56**. The change in design to the Bridge substantially increased Plaintiff's costs for performance of its work. *Id.* ¶ **15**. Defendant delayed the commencement of Plaintiff's work and forced Plaintiff to perform its work in "substantially different conditions than originally anticipated when entering into the Subcontract." *Id.* ¶ **15**.

On August 10, 2018, Plaintiff presented Defendant with an initial estimate of the impacts expected to arise from the design change. *Id.* ¶ **16**. On August 23, 2018, Plaintiff and Defendant presented the estimated impacts to NMDOT for compensation as a change order to the contract. *Id.* ¶ **17**. At that point, Defendant remained willing to absorb the cost to prepare a revised design but joined Plaintiff in asking NMDOT to pay for impacts on Plaintiff's costs of construction. *Id.* Defendant and NMDOT then executed Change Order No. 6 on October 7, 2020, without disclosing the change to Plaintiff. *Id.* ¶ **19**. The change order granted a forty-five-day extension to the prime contract, but it allowed no compensation for any cost impacts of the change. *Id.* ¶ **20**. The change order states, "the Contractor hereby waives any claim under the Contract for additional compensation for such work." *Id.* ¶ **21; Doc. 1 at 57.**

After the execution of Change Order No. 6, Defendant continued to maintain that Plaintiff's claim for additional compensation was a proper claim against NMDOT and must be processed in accordance with the administrative review requirements contained in § 105.20 of the NMDOT, Standard Specifications for Highway and Bridge Construction. *Id.* **¶ 22**.

On December 20, 2022, Plaintiff, Defendant, and NMDOT conducted a Public Works mediation as required by the Public Works Mediation Act, NMSA 1978, §13-4C-11 and Section 105.20.4 of the New Mexico Department of Transportation Standard Specifications for Highway and Bridge Construction. *Id.* **¶ 24**.

After the mediation, Plaintiff asked Defendant to file a summons and complaint on its behalf to preserve its claims against NMDOT. *Id.* **¶ 26**. Defendant insisted that Plaintiff should first release Defendant from any liability for its decision to sign the waiver language in Change Order No. 6. When Plaintiff pointed out that it was not required to provide such a release under the Subcontract, Defendant chose not to file a complaint. *Id.* On March 6, 2023, Plaintiff filed suit against Defendant, alleging (I) breach of contract, (II) unjust enrichment/quantum meruit, and (III) breach of the duty of good faith and fair dealing.

## DISCUSSION

In the instant motion, Defendant moves under Fed. R. Civ. P. 12(b)(6) to dismiss all three of Plaintiff's claims against it. Plaintiff does not oppose Defendant's request to dismiss Count II of the Complaint. **Doc. 9 at 15**. The Court therefore dismisses this claim. *See Acevedo v. Sw. Airlines Co.*, No. CV 16-24 MV/LF, 2018 WL 2392215, at *12 (D.N.M. May 25, 2018) ("[W]here there is a contractual relationship between the parties, claims for unjust enrichment or quantum meruit are barred."). The Court addresses Plaintiff's remaining claims below.

In the alternative, Defendant seeks summary judgment on different grounds from those asserted in its motion to dismiss. Fisher requests summary judgment based on Plaintiff's alleged failure to act by commencing a lawsuit against NMDOT after the parties' mediation. **Doc. 5 at 18**. Malcolm has come forward with additional material facts that dispute Defendant's asserted basis. Defendant's motion for summary judgment necessarily rests on factual disputes that cannot properly be resolved at this stage of the case. **Doc. 9 at 11–12**. Consequently, the Court denies Fisher's alternative request on the grounds that genuine issues of material fact preclude summary judgment under Fed. R. Civ. P. 56.

## I.     Rule 12(b)(6) Standard

To survive a 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This does not mean that the complaint needs detailed factual allegations; however, it is not enough merely that there might be some conceivable set of facts that entitles the Plaintiff to relief. *Twombly*, 550 U.S. at 555. Naturally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss, the Court must assume all the complaint's factual allegations are true, but it is not bound to accept as true legal conclusions, including any "legal conclusion couched as a factual allegation." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Accordingly, the Court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest

4

the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff's stated claim for relief is adequate, the Court views "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The essential question is whether the plaintiff has nudged his or her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Generally, courts may only consider the complaint when deciding a 12(b)(6) motion to dismiss. However, there are three limited exceptions to this rule: (i) documents that the complaint incorporates by reference," (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," (iii) "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Consequently, the Court finds that it may properly consider all documents attached to the Complaint, including the Subcontract which incorporates the New Mexico Standard Specifications for Highway and Bridge Construction.

## II.     Plaintiff states a plausible claim in Count I for breach of contract.

Because this is a diversity of citizenship case arising out of contract dispute in New Mexico, this Court applies New Mexico law. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). To prevail on a breach-of-contract claim, Plaintiff is required to plead and prove (1) the existence of a contract, (2) breach of the contract, (3) causation, and (4) damages. *Cent. Mkt., Ltd., Inc. v. Multi-Concept Hosp., LLC*, 2022-NMCA-021, ¶ 38, 508 P.3d 924, 935. The second element – breach of the contract – is at issue in this case. Under New Mexico law, a party breaches a contract when it fails to perform a contractual obligation when performance comes due. UJI 13-822.

Plaintiff alleges that Defendant breached the Subcontract in five ways: (1) amending Plaintiff's scope of work without consulting Plaintiff, (2) delaying and increasing the cost of performance of the Subcontract, (3) releasing Plaintiff's pass-through claims against NMDOT without Plaintiff's approval, (4) failing to preserve Plaintiff's claims for additional compensation, and (5) failing to pay Plaintiff for increased costs of performing changed work under the Subcontract. *Id.* ¶ **30**. Defendant contends that the Subcontract bars this claim. **Doc. 5 at 7–8 & 12**.

### A. Defendant did not breach the Subcontract when it amended Plaintiff's scope of work, delayed Plaintiff's work, and increased the costs of Plaintiff's work.

The Court begins by evaluating whether Defendant breached the Subcontract when it amended Plaintiff's scope of work without consulting Plaintiff, delayed Plaintiff's work, and increased the costs the of Plaintiff's work.

Article 2 of the Subcontract states, "[t]hat Schedule may be changed by Contractor at its discretion as work progresses on the project, provided that the length of time for the Subcontractor's performance shall not be shortened without its consent." **Doc. 1 at 12**. Article 10 states, "[t]he Contractor or the Owner may at any time by written order and without notice to the Subcontractor's sureties, make changes in, additions to or omissions from the work to be performed under this Subcontract." **Doc. 1 at 14**.

Rather than imposing contractual restrictions that prevent Defendant from amending Plaintiff's scope of work without its consent, delaying Plaintiff's work, and increasing Plaintiff's costs, the Subcontract expressly allows Defendant to make such changes. As a result, the Court concludes that Defendant did not breach any contractual obligation or restriction in the Subcontract by taking these actions.

**B.      Plaintiff's allegation that Defendant released Plaintiff's pass-through claims without notifying it establishes a plausible breach of contract claim.**

The Court next evaluates whether Defendant breached the Subcontract when it released Plaintiff's pass-through claims against NMDOT without Plaintiff's approval and failed to preserve Plaintiff's claims for additional compensation against NMDOT. In support of these claims, Plaintiff alleges: (1) Defendant and NMDOT executed Change Order No. 6 on October 7, 2020, without disclosing the change to Plaintiff; (2) Defendant and NMDOT were aware at the time of executing Change Order No. 6 that Plaintiff was asserting time and cost impacts; (3) Change Order No. 6 confirmed approval for the design change but included no compensation for Plaintiff's additional costs; (3) Change Order No. 6 specifically provided that "by approving this change order the Contractor acknowledges that the compensation provided herein properly and adequately compensates the Contractor for additional work described in this change order, and the Contractor hereby waives any claim under the Contract for additional compensation for such work," (4) Plaintiff asked Defendant to maintain Plaintiff's claim for compensation against NMDOT, but Defendant chose not to file a complaint. **Compl. ¶¶ 18–21 & 26**.

Viewed in a light most favorable to Plaintiff, these facts establish that Defendant effectively deprived Plaintiff of its rights under the Subcontract to prepare and pursue claims for additional compensation against NMDOT. Article 13 addresses Plaintiff's pass-through claims against NMDOT and states, "Contractor shall have the option to present such claims upon Subcontractors behalf, however, Subcontractor shall nevertheless have full responsibility for preparation of such claims and shall bear all expenses thereof, including attorney's fees." Accordingly, Plaintiff had a contractual right to prepare and pursue pass-through claims against NMDOT. However, based on the facts in the Complaint, Plaintiff was unable to exercise these rights because Defendant released Plaintiff's pass-through claims regarding the cost impacts from

the design change before Plaintiff could prepare them. As a result, at least at the 12(b)(6) stage, Plaintiff presented sufficient facts that, when taken as true, state a plausible breach of contract claim.

While Plaintiff's claim that Defendant released pass-through claims without notifying Plaintiff is sufficient, at this stage, to survive Defendant's 12(b)(6) motion, Plaintiff's claim concerning Defendant's failure to file a complaint on Plaintiff's behalf does not. Article 13 of the Subcontract specifies that the Defendant has the option but is not obligated to assert Plaintiff's pass-through claims. Therefore, Defendant did not breach the Subcontract by choosing not to file a complaint against NMDOT on the Plaintiff's behalf.

### C.    Plaintiff's allegation that Defendant failed to pay Plaintiff for increased costs of performing changed work establishes a plausible breach of contract claim.

Finally, the Court evaluates whether Defendant breached the Subcontract by failing to pay Plaintiff for increased costs of performing changed work under the Subcontract. Defendant again contends that this claim is barred by the Subcontract. **Doc. 5 at 8**. To substantiate this position, Defendant cites Articles 2 and 10 of the Subcontract, which require Defendant to agree in writing to extra costs resulting from a delay or work not listed on Attachment C. ***Id.*** Defendant, however, overlooks other terms in Article 10, which state that "[a]ny changes in quantities itemized on [Attachment] C shall cause an adjustment in the Subcontract price at the unit prices set forth on that [Attachment]. The Contractor will pay for extra work performed and materials furnished." **Doc. 1 at 14**.

As specified in Article 10 of the Subcontract, Defendant had a contractual obligation to pay Plaintiff for any changes in quantity to the labor or materials listed on Attachment C, even if such changes were not formally agreed upon in writing. Although the Complaint does not specify the exact nature of the changed work Plaintiff performed, its allegation that Defendant failed to

8

pay Plaintiff for the performance of changed work under the subcontract, taken as true, is sufficient to establish breach of the Subcontract at this stage of the case.

## III.   Plaintiff's breach-of-covenant claim is duplicative of its breach-of-contract claim.

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing for the same five reasons that it alleges Defendant breached the Subcontract. Defendant contends that Subcontract bars this claim, as the duty of good faith and fair dealing cannot be used to override the express provisions addressed in the terms of an integrated written contract, citing *Melnick v. State Farm Mut. Aut. Ins. Co.*, 1988-NMSC-012, ¶17, 106 N.M. 726, 749 P.2d 1105, 1110. **Doc. 5 at 11**.

Under New Mexico law, every contract has an implied covenant of good faith and fair dealing. *See Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 64, 115 N.M. 690, 858 P.2d 66. To establish breach of this covenant, Plaintiff must establish Defendant acted in bad faith in performing the contract or wrongfully and intentionally used the contract to harm Plaintiff. UJI 13-832. However, this implied covenant does not prohibit the parties from doing what the contract expressly allows them to do. UJI13-832; *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 67, 115 N.M. 690, 707, 858 P.2d 66, 83 ("It would be incongruous to hold that the defendants acted in bad faith in acting in accordance with an express contractual provision."). Therefore, Defendant did not breach this implied covenant when it amended Plaintiff's scope of work without consulting Plaintiff, delayed Plaintiff's work, and increased Plaintiff's work costs. This is because, as outlined above, the Subcontract expressly permitted Defendant to take these actions.

As for the aspects of Plaintiff's breach-of-covenant claim that fall outside the express terms of the Subcontract, the New Mexico Supreme Court recognized that a cause of action for breach

of the covenant of good faith and fair dealing sounds in contract. *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, 117 N.M. 434, 872 P.2d at 857. Put another way, the covenant of good faith and fair dealing "becomes a part of the contract and the remedy for breach is on the contract itself." *See id.* ¶ 17 (quoting *Wagenseller v. Scottsdale Memorial Hosp*, 147 Ariz. 370, 710 P.2d 1025, 1040 (1985)).

Since a breach of the implied covenant of good faith and fair dealing is intrinsically tied to the damages resulting from a breach of contract, and Plaintiff's breach-of-covenant claim relies on the exact same grounds as its breach-of-contract claim, a separate cause of action for breach of the implied covenant is duplicative. *See Hood v. Fulkerson*, 1985-NMSC-048, ¶ 12, 102 N.M. 677, 680, 699 P.2d 608, 611 ("Duplication of damages or double recovery for injuries received is not permissible."). Consequently, the Court dismisses Plaintiff's breach-of-covenant claim without prejudice. This dismissal, however, does not preclude Plaintiff from arguing and presenting evidence that breach of the implied covenant by Defendant constitutes breach of the Subcontract.

## IV.    NMDOT is not a necessary party under Rule 19.

In addition to requesting dismissal pursuant to Rule 12(b)(6), Defendant also requests dismissal pursuant to Rule 12(b)(7) because Plaintiff cannot join NMDOT as a party. **Doc. 5 at 17–18**. Plaintiff disagrees, asserting NMDOT is not a necessary party because Plaintiff's claims are not dependent on it obtaining relief from NMDOT. **Doc. 9 at 9–11**.

The Court agrees with Plaintiff and finds that NMDOT is not a necessary party. The Court applies a three-step analysis when deciding whether to dismiss a case for failure to join a party. *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir.). First, the Court determines whether the absent party is necessary under Rule 19(a). *Id.* If the Court decides that the absent

party is necessary, the Court then determines if joinder is feasible. *Id.* Finally, if joinder is not feasible, the Court decides if the necessary party is indispensable.

Under Rule 19(a)(1), a party is a necessary if (1) in that party's absence the Court cannot accord complete relief; or (2) that party claims an interest relating to the subject of the action and proceeding without the party may (i) impair or impede the person's ability to protect their interest, or (ii) leave an existing party subject to substantial risk of incurring double or multiple or otherwise inconsistent obligations.

NMDOT is not a necessary party. This case revolves around increased costs incurred by Plaintiff due to Defendant's requested design change. Change Order No. 6 specifies, "Fisher Sand & Gravel is willing to absorb the costs of the redesign and any other additional costs affected by the redesign." **Doc. 1 at 56**. Since Defendant bears sole responsibility for all costs affected by the redesign, NMDOT has no interest in the subject matter of this case and is not necessary for the Court to accord complete relief.

Additionally, inconsistent obligations are not a concern in this case. Defendant contends that proceeding without NMDOT may leave it footing the bill with no recourse. **Doc. 5 at 17**. While this is inconvenient, it does not create inconsistent obligations. The Tenth Circuit has explained that inconsistent obligations occur when a party cannot obey conflicting orders from different courts. *See Salt Lake Trib. Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1098 (10th Cir. 2003) (explaining that an inconsistent obligation arises when a federal court orders a defendant to transfer stock to the plaintiff, while a state court orders the defendant to transfer the same stock to a party not in the federal case). No such scenario exists here. NMDOT is not pursuing the same money as Plaintiff in a different court. Thus, the Court cannot dismiss Plaintiff's claims for failure to join NMDOT, as NMDOT is not a necessary party.

11

## **<u>CONCLUSION</u>**

For the reasons outlined above, *Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgement*, **Doc. 5**, is **GRANTED** in part and **DENIED** in part. Defendant's request to dismiss Counts II and III is granted because Plaintiff does not oppose dismissal of Count II and Count III duplicates Count I. Defendant's alternative request for summary judgment is denied based on the existence of genuine issues of material fact. Finally, the Court finds that Plaintiff stated a plausible breach-of-contract claim in Count I and denies dismissal of this claim to the extent it involves Defendant's release Plaintiff's pass-through claims and Defendant's failure to pay Plaintiff for changed work under the Subcontract.

**IT IS SO ORDERED.**

_____

CHIEF UNITED STATES DISTRICT JUDGE